**NATIONAL CORN GROWERS ASSOCIATION, New Energy Company of Indiana, Archer Daniels Midland Company, Ohio Farm Bureau Federation, and A.E. Staley Manufacturing Company, Plaintiffs–Cross–Appellants,**

v.

**James BAKER, III, Secretary, John M. Walker, Jr., Assistant Secretary, William Von Raab, Commissioner, United States of America, Citicorp International Co., Inc. and RAJ Chemicals, Inc., Defendants–Appellants.**

Nos. 87–1147 to 87–1149 and 87–1160.

United States Court of Appeals,
Federal Circuit.

Feb. 9, 1988.

Post-trial Motion Denied
March 14, 1988.

Stephen L. Urbanczyk, of Williams & Connolly, Washington, D.C., argued, for appellee National. With him on the brief, were Aubrey M. Daniel, III, Manley W. Roberts, Robert W. Hamilton, and William R. Murray, Jr.

David M. Cohen, Director, of the Commercial Litigation Branch, Dept. of Justice, New York City, argued, for defendant-appellant Baker. With him on the brief, were Richard K. Willard, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office and Kenneth N. Wolf.

A. Douglas Melamed, of Wilmer, Cutler & Pickering, Washington, D.C., argued, for defendant-appellant Citicorp. With him on the brief, were Robert C. Cassidy, Jr. and Deborah M. Levy.

Joseph A. Artabane, of Spriggs, Bode & Hollingsworth, Washington, D.C., argued, for defendant-appellant RAJ. With him on the brief, were William H. Bode, Mark J. Riedy and Joseph L. Nellis.

Robert J. Leo, New York City, was on the brief, for amicus curiae, American Ass'n of Exporters and Importers.

William F. Demarest, Jr., J. Peter Luedtke, and Thomas C. Jones, Jr., of Holland & Hart, Washington, D.C., were on the brief, for amicus curiae Citgo Petroleum Corp.

Before BISSELL and MAYER, Circuit Judges, and NICHOLS, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge.

Secretary of the Treasury James Baker (in his official capacity on behalf of the United States), Citicorp International Co., Inc. (Citicorp), and RAJ Chemicals, Inc. (RAJ) appeal the decision of the Court of International Trade, No. 85–08–01151, 9 CIT 571, 623 F.Supp. 1262 (1985), arguing that the trial court lacked jurisdiction. Upon examination of the complete record and decisions below, this court holds that the Court of International Trade indeed lacked jurisdiction to entertain the suit. We reverse and remand with instructions to dismiss the plaintiffs-cross-appellants/appellees' suit with prejudice.

## BACKGROUND

In 1983, Congress added a new temporary provision to the Tariff Schedule of the United States (TSUS), imposing a sixty-cent per gallon (60¢/gallon tariff on ethanol "provided for in item 427.88." Section 901.50 provides:

Ethyl alcohol (provided for in item 427.-88, part 2D, schedule 4) when imported to be used in producing a mixture of gasoline and alcohol or a mixture of a special fuel and alcohol for use as fuel, or when imported to be used otherwise as fuel * * *. 60¢ per gal.

TSUS 901.50 (1984)

TSUS 427.88 previously imposed a three percent (3%) *ad valorem* duty on imports of ethanol. In September 1984, the Customs Service (Customs or Service), through the Commissioner of Customs, established a practice that certain mixtures of ethanol would not be dutiable under TSUS 901.50, but only 427.88. Upon various importers' request, Customs issued several private ruling letters as to mixtures of ethanol, with as little as 7.5 percent other additives.

Domestic producers, hearing of this, filed informal objections with Customs and began an intense lobbying campaign to convince Customs to revoke the existing policy. Objections by Senators Robert Dole and Richard Lugar, among others, reinforced the domestic producers' arguments that exemption from the 60¢ duty resulted in a subsidy of sorts for importers of non-pure ethanol. On August 2, 1985, such domestic producers, including appellees, National Corn Growers Association (NCGA), New Energy Company of Indiana (NECI) and others, achieved their goal. The Department of the Treasury announced Commissioner William von Raab's decision to apply the 60¢/gallon duty to "ethanol imports mixed with other additives." The announcement clearly stated that the change "revers[ed] a previous Customs ruling."

After thus revoking the September 1984 rulings, Customs notified various importers by letter, among them Citicorp and RAJ, that the additional TSUS 901.50 60¢/gallon duty would apply to mixed ethanol imports.

In order to avoid unfairness, attention was invited to the sixth paragraph of the August 2, 1985, revocation which provided the importers the opportunity to present evidence indicating reliance on ruling letters issued prior to the policy revocation. Specifically, Customs stated:

With respect to any entries made after the effective date of the instant [August 2, 1985] ruling, Customs will consider all facts and evidence in connection with claims of reliance on the ruling previously issued.

Both Citicorp and RAJ submitted evidence arguably showing reliance on rulings issued before August 2, 1985, though the scheduled imports were to enter the United States after the August 2 deadline. Based on each company's submission, Customs issued new ruling letters—pursuant to 19 C.F.R. § 177.8—in August of 1985, permitting the importation of certain shipments of mixed ethanol under the pre-August 2, 1985, practice—*i.e.*, the 60¢/gallon duty would not apply. The letters to Citicorp were issued on August 7 and August 27, 1985. The letter to RAJ was dated August 27, 1985.

Relying on the Customs rulings, as they say, RAJ imported the permissible number of gallons stated in the ruling letters prior to the deadline set by Customs, *i.e.*, November 1, 1985, 5:00 p.m. Citicorp imported its allotted number of gallons prior to the November 1 deadline also, ceasing all shipments after their October 28 and 29, 1985, entries. Citicorp has not entered mixtures since then.

Appellees, distressed at the continued importation of exempted ethanol and without waiting for all the actual entries or the filing by them of formal protests, filed suit against the government for injunctive relief in the Court of International Trade on August 29, 1985, challenging the post-August 2 ruling letters issued to Citicorp and RAJ. Appellees questioned the Customs Service's authority to exempt appellants from payment of duties because of appellants' reliance on previously stated Customs' policies. "Appellees sought * * * a declaration that the Service's grandfather

decisions were unlawful and that the full statutory duties were owing on all ethanol blends entered after August 2 * * *." (Appellees' brief at 8.) Judge Carman denied appellees', then plaintiffs in the action, motions for temporary restraining orders and preliminary injunctions on September 20, 1985. The motions before Judge Carman specifically sought a suspension of the liquidation of the shipments authorized by the August 1985 ruling letters to both Citicorp and RAJ.

Appellees renewed their motion for preliminary injunction which was denied on November 26, 1985, by Court of International Trade Judge Aquilino. On the same day, Judge Aquilino granted Citicorp's motion to intervene, having previously granted RAJ's motion to intervene. On December 4, 1985, the trial court held a pre-trial conference at which a trial schedule developed. The case was tried before Judge Aquilino on December 16, 1985, and January 6–7, 1986. The court took the case under advisement on January 22, 1986.

In the meantime, Customs liquidated the remaining imports of ethanol in issue belonging to Citicorp and the 90-day period for finality of liquidation began to run. 19 U.S.C. § 1514. Judge Aquilino entered judgment and issued his decision on May 23, 1986, after all entries relevant herein had been liquidated, and the entries had become final pursuant to section 1514. See the appendix for the full text of relevant statutes. We understand that Customs did reliquidate when the finality period had not run. The trial court held that it had jurisdiction to hear the case, regardless of appellees' failure to protest Customs' rulings pursuant to section 516 of the Tariff Act of 1930, 19 U.S.C. § 1516, and 28 U.S.C. § 1581(b), which govern such complaints by domestic manufacturers. The court reviewed the circumstances of each entry and challenged them as not made in reasonable reliance, but it also held that Customs had no authority to issue ruling letters exempting Citicorp, RAJ, and others from the August 2, 1985, imposition of the 60¢/gallon duty, regardless of any reliance proven by the parties involved. As appears from the language used, it took the position that

once Customs had determined that mixed ethanol was dutiable under section 901.50, any liquidation of any entry whenever made at a lower rate was lawless behavior. It took no notice of any possible right to limit the retroactive effect of any change of practice. Lastly, the court held that the parties were not entitled to rely on the Customs' ruling letters permitting entry of ethanol shipments at a lower duty. It ordered RAJ and Citicorp to pay into the Treasury the amounts the Commissioner's alleged malfeasance had enriched them, no reliquidation of the entries being needed in the court's view.

Upon filing and denial of appropriate post-trial motions, this appeal ensued.

## ISSUES

The threshold issue to dispose of before all others in this appeal is whether the Court of International Trade appropriately claimed jurisdiction of the present suit under authority of 28 U.S.C. § 1581(i) or the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* If, as we hold, it did not, all other issues are preempted however extensively the parties have discussed them.

## OPINION

### I. Jurisdiction

A. *Congressional Protection for Domestic Industry*

Appellees allege that the Secretary of the Treasury and the Customs Commissioner behaved in a lawless manner in not applying to RAJ's and Citicorp's shipments of ethanol the tariffs imposed by TSUS 901.50. It may be noted that appellees' whole case is for a retroactive application of the change of practice. There is no issue about prospective application. Appellees contend that their allegations could not be properly reviewed under section 1516 because the complaints in question include matters other than rate of duty and classification. Section 1516(a) provides in pertinent part:

 **(a) Request for classification and rate of duty; petition**

(1) The Secretary shall, upon written request by an interested party furnish the classification and the rate of duty imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by such interested party. If the interested party believes that the appraised value, the classification, or rate of duty is not correct, it may file a petition with the Secretary setting forth—

(A) a description of the merchandise,

(B) the appraised value, the classification, or the rate of duty that it believes proper, and

(C) the reasons for its belief.

(2) As used in this section, the term "interested party" means a person who is—

(A) a manufacturer, producer, or wholesaler in the United States;

(B) a certified union or recognized union or group of workers which is representative of an industry engaged in the manufacture, production, or wholesale in the United States; or

(C) a trade or business association a majority of whose members are manufacturers, producers, or wholesalers in the United States, of goods of the same class or kind as the designated imported merchandise. Such term includes an association, a majority of whose members is composed of persons described in subparagraph (A), (B), or (C).

The trial court upheld appellees' interpretation of section 1516 as inapplicable in this case and exercised jurisdiction under section 1581(i), although the trial judge did note in his factual recitation that appellees questioned the application of a lesser rate of duty to appellants. It seems obvious to us that the rulings did involve classification and rate of duty. However, the trial judge made no further statements regarding appellees' assertions of incorrect duty and classification application. We disagree with the trial judge's interpretation of the applicability of section 1516 and his subsequent determination that jurisdictional authority rested under section 1581(i).

Section 1516 deals with several possible eventualities, and a reading of section 1516 will show that the domestic industry can obtain only prospective relief under section 1516, whatever eventuality occurs. The exhaustion of administrative remedies, as the "primary jurisdiction" rule, was established in order to limit judicial review of strictly administrative judgments. The Supreme Court in *Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947) clearly defined the scope of judicial review in this context:

> Where Congress has clearly commanded that administrative judgment be taken initially or exclusively, the courts have no lawful function to anticipate the administrative decision with their own, * * *. It would nullify the congressional objects in providing the administrative determination * * * includ[ing] securing uniformity of administrative policy and disposition, expertness of judgment, and finality in determination.

*Id.* at 767–68, 67 S.Ct. at 1501 (footnote omitted).

Congress established a clear administrative process through which domestic industry could object to the importation of merchandise at specific tariff levels, 19 U.S.C. § 1516, and through which the Court of International Trade could review protests by domestic industry that were not sustained by the Secretary, 28 U.S.C. § 1581(b). This was done in the precursors of the present law after *Louisiana v. McAdoo*, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506 (1914), had established and applied to Customs duties the general rule that no one can have standing to litigate the application of a tax to another. Congress felt an exception was needed for the case of a domestic industry injured by competition of imports on which lawful duty was not collected.

Assuming without deciding that section 1516 might not be the domestic industry's avenue of relief for fraudulent or otherwise void decisions, this is not such a case. *McAdoo* establishes the authority of the Secretary in actions such as those of the instant case. *Id.* at 632, 34 S.Ct. at 940

(discussing the disfavor in which suits against the Secretary of the Treasury for charging too low a tariff were viewed). Clearly Commissioner von Raab may have been mistaken, but did not make a void decision in interpreting the Customs law in question or in permitting reliance on then-established Customs' practice to be considered in assessing the appropriate duties for RAJ and Citicorp, as he must interpret all Customs law in performing his duties subject to appropriate judicial review. Appellees cite to *Tracy v. Swartwout*, 35 U.S. (10 Pet.) 80, 9 L.Ed. 354 (1836), for the proposition that the Secretary and the Commissioner must collect the duties appellees deem appropriate. Justice McLean points out that:

> The secretary of the treasury is bound by the law; and although in the exercise of his discretion he may adopt necessary forms and modes of giving effect to the law: yet, neither he nor those who act under him, can dispense with, or alter any of its provisions.

*Id.* at 94.

Appellees' reliance on this language is misplaced since, in point of fact, the Secretary did collect the duties he or his delegatee, the Commissioner, deemed required under the law applicable to RAJ's and Citicorp's imports. Appellees are, in essence, attempting to enforce a retroactive collection of duties from RAJ and Citicorp on the basis of a changed interpretation. Nothing in 19 U.S.C. § 3, or *Swartwout* and its progeny, mandates the Secretary of the Treasury or the Commissioner to make retroactive changes in duties if he makes any change at all. Such a requirement will appear to many minds to be unfair, and Congress did *not* intend the statute to be construed in such a fashion. Appellees misread the holdings and import of *Swartwout.*

■ Here, Citicorp and RAJ premised their hope of importing free of the extra charge on policies they supposed in existence at the time their requests for clarification were made and new ruling letters were issued. Persons should not be penalized for following the law as stated by Customs

at the time of the transaction if Customs later has a change of heart. *See, e.g., Heraeus–Amersil, Inc. v. United States*, 795 F.2d 1575 (Fed.Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); *Siemens America, Inc. v. United States*, 692 F.2d 1382, 2 Fed.Cir. (T) 9 (1982). Assertion of authority by the Treasury to issue ruling letters selecting delayed effective dates falls within the scope of permitted activity. *McAdoo*, 234 U.S. at 633, 34 S.Ct. at 941, is instructive in establishing that the authority represents a discretionary act on the part of the Secretary. "The duties imposed upon the Secretary of the Treasury in the collection of sugar tariffs are not ministerial. They are executive and involve the exercise of judgment and discretion." *Id.* The actions in question were the product of the executive branch's discretionary powers in interpreting Customs' laws, and not simple ministerial tasks for which enforcement can be sought in the courts. *Id.* Therefore, they could not be reviewed by mandamus. Appellees were incorrect in attacking the validity of the Secretary's or the Commissioner's actions. As *McAdoo* holds: "the courts will refuse to substitute their judgment or discretion for that of the official entrusted by law with its execution. Interference in such a case would be to interfere with the ordinary functions of government." *Id.* Both the Court of International Trade and appellees fail to accord the proper and *required* deference to the Secretary's or the Commissioner's actions by refusing to confine judicial review to the channels and the relief Congress intended. As such, the Court of International Trade's decision cannot be sustained.

The House Report to the Customs Court Act of 1980 detailed that section 1516 permits American manufacturers to protest administrative determinations regarding imported merchandise, citing to former section 1582(b) defining the scope of such protests. 1980 U.S.Code Cong. & Admin. News 3729, 3756, H.R. No. 1235, 96th Cong., 1st Sess., at 45. After much debate, Congress determined that any relief forthcoming from such objections could only be

prospective in nature. Section 1514(a) defines the finality of Customs liquidations:

**(a) Finality of decisions; return of papers**

Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds and errors), and section 1521 of this title (relating to reliquidations on account of fraud), decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or any modification thereof;

(6) the refusal to pay a claim for drawback; and

(7) the refusal to reliquidate an entry under section 1520(c) of this title, shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the appropriate customs officer, who shall take action accordingly.

Section 1514 establishes the finality of Customs liquidations not properly protested, except in limited situations not including American manufacturers' protests. Going back to the original legislative history of sections 1514 and 1516, the committee established that importers and domestic producers deserved certainty in the conduct of their affairs, a certainty which was the overriding policy behind section 1514 and section 1516 entitling importers to rely on the enacted statutes and stated congressional policy:

The effect of [section 1516] is to give the American manufacturer, producer, or wholesaler the opportunity and the right to protest against any or all importations by any importer or importers. The importers, on the other hand, have no notice that such protest may be made as to their importations until after their merchandise has arrived in the United States, has been entered, and the entries liquidated. *It is believed that an importer should be to some extent protected in his reliance upon an existing practice or an interpretation of the law by the Government.* [Emphasis supplied.]

House Ways & Means Committee Report to Accompany H.R. 2667, 71st Cong., 1st Sess., May 9, 1929, at 180.

The various committee reports defining the scope of and policies behind the Tariff Act of 1930 also more than adequately sustain this court's view that appellees were bound to pursue a section 1516 action in order to protest the Custom Service's treatment of RAJ's and Citicorp's imports, even though their relief would be prospective only. The Senate Finance Committee *expressly* recognized the special nature of this route through which American industry could voice its objections to international trade-related matters.

Section 516 for the *first* time recognized that the American producer has an interest in appraisement and classification of imported merchandise. *It was there provided* that the domestic manufacturer might protest against the appraisement or classification of merchandise of a

class or kind produced by him. [Emphasis supplied.]

Senate Finance Committee Report to Accompany H.R. 2667, 71st Cong., 1st Sess., Sept. 4, 1929, at 73–74.

With utmost clarity, Congress evinced its intent that section 1516 provide the exclusive remedy for American industry protests. Appellees' actions in bypassing the statutory procedure fly in the face of both the plain meaning of the statute and congressional intent.

■ Appellees failed to follow the carefully prescribed framework Congress established, because invocation of section 1516 could not have prevented the completion of appellants, RAJ's and Citicorp's importation of ethanol mixtures prior to November 2 free of 901.50 duty. But, section 1516 was not designed to provide domestic industry with such authority. The entire procedure of section 1516 could not have resulted in anything but a prospective decision and application regarding value and/or classification. What section 1516 could do, and would have done if invoked, was to prevent *future* RAJ or Citicorp shipments of ethanol from entering the country at the lower TSUS rate, supposing the reviewing court agreed with the later Customs view. As to the shipments already begun, appellees had no remedy and the law sometimes affords no remedies for injurious actions taken. *See, e.g., Omnia Commercial Co. v. United States,* 261 U.S. 502, 510, 43 S.Ct. 437, 438, 67 L.Ed. 773 (1923); *Gulf Oil Corp. v. Hickel,* 435 F.2d 440, 447, 140 U.S.App.D.C. 368 (1970) ("if [an agency] issue[s] and interpret[s] regulations which are rational and supportable in their general application, [the agency] cannot necessarily be charged with unreasonableness because in particular applications the regulations and general interpretations may grind with a rough edge"). It may be noted, moreover, even if appellees could impose 901.50 on the involved shipments, no payments to appellees would ensue, and they would continue to suffer whatever injury they have suffered now from the few tanker loads that RAJ and Citicorp brought in at the old rate. Retroactive assessment upon RAJ and Citicorp would not take those loads out of the United States market or return them to the country of origin, and their impact on the United States domestic market would remain unchanged. Because appellees sought retroactive assessment of duty which is impermissible within the statutory framework of section 1516 or any other trade law, their relief would be consistently inappropriate to make them whole.

■ The trial court may have supposed that section 1516 was only for litigation of nonfrivolous issues as to rates of duty applicable, and not for lawless failure by Customs officers to obey any law. He recognized, as we have said, no right to limit the retroactive effect of a change in practice. Once Customs had determined that 901.50 applied to mixtures including ethanol, any Customs' action thereafter excusing any importer from paying such duty was to the court a blatantly lawless act. Whatever validity there might be to a view that section 1516 is not the remedy in some cases of that kind, this is not one. We take judicial notice that the practice of limiting the retroactive effect of changed rulings is very old in the history of the United States revenue services, and is at least respectable. There is nothing to show the Commissioner did not act in good faith in reliance on regulations and practices he would have been obliged to consider regular.

As with any other agency, Customs may and has established uniform practices upon which importers may rely. 19 C.F.R. § 177.10(b)–(e). Customs may also, through its Commissioner or the Secretary of the Treasury, interpret the Customs laws regarding the collection of duties. 19 U.S.C. § 3. Section 3 provides: "The Secretary of the Treasury shall direct the superintendence of the collection of the duties on imports *as he shall judge best.*" (Emphasis supplied.) Obviously the Secretary and the Commissioner, through powers delegated by the Secretary, have discretionary authority to determine when, how, and how much duty is to be collected. *Id. See also Elliott v. Swartwout,* 35 U.S. (10 Pet.) 137, 153, 9 L.Ed. 373 (1836); *Tracy v. Swartw-*

*out,* 35 U.S. (10 Pet.) 80, 94, 9 L.Ed. 354 (1836); *Arbuckle Bros. v. United States,* 3 Ct.Cust.App. 105, 107, TD 32362 (1912).

Any action taken by these executive branch administrators with respect to such uniform practices represents the applicable law until changed or modified. 19 C.F.R. § 177.10(a)–(c). Included in the types of uniform practices which may be affected is the effective dates of assessing and collecting tariffs. 19 C.F.R. § 177.10(e). As Justice Lamar of the United States Supreme Court stated in *United States v. Midwest Oil Co.,* 236 U.S. 459, 35 S.Ct. 309, 59 L.Ed. 673 (1915), when discussing both the flexibility accorded executive branch officials and the establishment of a uniform custom:

> [ ] It may be argued that while these facts and rulings prove a usage they do not establish its validity. But government is a practical affair intended for practical men. Both officers, law-makers and citizens naturally adjust themselves to any long-continued action of the Executive Department—on the presumption that unauthorized acts would not have been allowed to be so often repeated as to crystallize into a regular practice. That presumption is not reasoning in a circle but the basis of a wise and quieting rule that in determining the meaning of a statute or the existence of a power, weight shall be given to the usage itself —even when the validity of the practice is the subject of investigation.

*Id.* at 472–73, 35 S.Ct. at 313.

Appellants in the instant case looked to the executive branch's actions to determine the law applicable to their import transactions. They relied on what it said and should have done so, regardless of possible questions being raised concerning the propriety of Customs' interpretation. The law is the law at the time of its existence, whether wrong or not, and "practical men" have a right to rely on it at the time they perpetrate their actions.

### B. *Section 1581*

Appellees' brief urges that not section 1581(b), but section 1581(i) is the proper statute through which the Court of Inter-

national Trade may entertain jurisdiction over the present suit. Appellees predicate this view on the assertion that section 1516 was not the channel through which suit could be brought, but rather that the Customs Service's actions were reviewable under the general authority of the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.,* and the catch-all jurisdictional grant of section 1581(i). Appellees argue that section 1581's specific grant of review does not preclude general judicial review of actions supposedly not covered by the statute.

Federal courts are courts of limited jurisdiction. The general jurisdiction of the Court of International Trade is defined under 28 U.S.C. § 1581. Congress expressly stated that the jurisdiction accorded the Court of International Trade was limited to "those civil actions which arise directly out of an import transaction and involve one of the many international trade laws." Customs Court Act of 1980, Pub.L. No. 96–417, 1980 U.S.Code Cong. & Admin.News 3729, 3745, citing House Report No. 96–1235, at 33.

Each section 1581 subsection delineates particular laws over which the Court of International Trade may assert jurisdiction. In the instant case, domestic producers sought to object to the importation of merchandise at what they considered an unlawfully low rate, a matter for section 1516 determination. *See* section A, *supra.* Subsection 1581(b) establishes jurisdiction in the Court of International Trade for such situations:

> "(b) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516 of the Tariff Act of 1930."

28 U.S.C. § 1581(b).

The House and Senate reports on section 1581 state that there exist certain current prerequisites for the filing of a civil action under section 1581 which are preserved by the legislation. *See* Customs Court Act of 1979, Senate Judiciary Committee Report to Accompany S. 1654, 96th Cong., 1st Sess., Dec. 7, 1979 at 7. In discussing the prerequisites generally under an analysis

of subsection (a), the reports find that "the filing and denial of a protest will continue as prerequisites to the commencement of a civil action." *Id.;* House Report No. 1235, 96th Cong., 2d Sess., at 44, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729, 3755. Such prerequisites naturally and logically carry over to the interpretation of subsection (b) and every other subsection under 1581, unless otherwise stated. The Senate Judiciary Committee Report notes that the prerequisites preserved include an exhaustion of the procedures specified in section 1516.*

In this case, appellees chose to ignore the precepts of subsection 1581 and attempted to circumvent the Congressionally mandated process by immediately filing suit. As the language of the Senate Report indicates, such circumvention is expressly prohibited. *See* Senate Finance Comm. Rept., *supra* at 73–74. *See also American Air Parcel Forwarding Co. v. United States,* 718 F.2d 1546, 1550, 2 Fed.Cir. (T) 1, 4 (1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984). The jurisdictional statute is set up to reflect existing law and not to expand the Court of International Trade jurisdiction to the point of creating new causes of action not founded on other provisions of existing law. House Report No. 1235, 96th Cong., 2d Sess., at 47, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729, 3758.

■ Appellees argue, however, that review is appropriate both under the catch-all provisions of section 1581(i) and the APA. To support their assertions that section 1581(i) is appropriate, appellees partially rely [among other case cites] on *Luggage & Leather Goods Mfrs. of Am. v. United States,* 588 F.Supp. 1413 (Ct. Int'l Trade 1984), which held that the trade association bringing suit did not have to file a section 1516 petition prior to seeking judicial re-

view of the then-President's actions. We disagree with the appellees' reliance on such authority. Apart from the obvious comment that Court of International Trade decisions are not binding precedent on this court, the case is readily distinguishable because the administrative relief sought in *Luggage & Leather Goods Mfrs.* was manifestly *futile.* The futility was grounded in the fact that the reviewing authorities under section 1516 were unable to override the presidential proclamation in question: "the Customs officials [were] legally foreclosed from granting the relief sought." *Luggage & Leather Goods Mfrs.,* 588 F.Supp. at 1420. The present suit is completely inapposite to the case in *Luggage & Leather Goods Mfrs.* Here the very policy and rate in question were Customs policies, peculiarly within the ambit of the Customs Service to correct. *See also U.S. Cane Sugar Refiners' Ass'n v. Block,* 544 F.Supp. 883 (Ct. Int'l Trade), *aff'd,* 683 F.2d 399 (CCPA 1982) (where relief sought is futile, importers need not file a section 1516 protest prior to filing suit in the Court of International Trade). When section 1516 is available, it is the proper remedy and not an exercise of futility or inadequacy.

To buttress their position that Congress devised one remedy for the type of relief sought by appellees and that the appropriate grant of jurisdiction rested with section 1581(b), appellants cite to *Miller & Co. v. United States,* 824 F.2d 961 (Fed.Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 773, 98 L.Ed.2d 859, (1988). In *Miller,* an International Trade Administration's (ITA) review and subsequent revocation of an existing countervailing duty was in question. An importer brought suit in the Court of International Trade challenging the ITA's publication of a countervailing duty review outside the prescribed statutory time frame. 19 U.S.C. § 1675(a)(1).

* Senate Report to Accompany S. 1654, 96th Cong., 1st Sess., Dec. 7, 1979 at 8. The text of the Senate Report refers a reader to two subsections of Title 28, later adopted *in toto,* which define the prerequisites to civil suit in the Court of International Trade: sections 2636(b) and 2637(b). The pertinent part of section 2637(b) applicable to section 1516 actions provides: "A

civil action contesting the denial of a petition under section 516 of the Tariff Act of 1930 may be commenced only by a person who has first exhausted the procedures specified in that section." 28 U.S.C. § 2637(b). The procedures of section 1516 require the filing and denial of a protest, neither of which occurred in the instant case.

Jurisdiction was alleged under 28 U.S.C. § 1581(i) because Miller asserted that the remedies under section 1581(c) were manifestly inadequate. The Federal Circuit held that "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 *is or could have been available,* * * *." 824 F.2d at 963. The court stated that Miller failed to participate in the two-year administrative review process initiated by the ITA, a required procedure in order to assert jurisdiction under section 1581(c). The remedy under section 1581(c) was not manifestly inadequate; it was simply unavailable to Miller because he failed to follow the proper procedures for review. The majority held that "mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." 824 F.2d at 964.

Because appellees circumvent the proper procedures of section 1516, fairness dictates that only the most extraordinary of circumstances would permit the invocation of jurisdiction under section 1581(i), rather than section 1581(b), which expressly gives review jurisdiction when an American manufacturer's protest is denied. Appellees' assertions and the trial court's finding of manifest inadequacy of remedies were meant to show such an extraordinary circumstance. The trial court's theory is that the very boundaries Congress prescribed for section 1516 relief, *i.e.,* that it is to be prospective only, makes the remedy inadequate. The unarticulated assumption of "manifestly inadequate" relief is that the relief sought is proper under the substantive law. Appellees fail to satisfy this basic premise and, as to this point, *Miller* is dispositive.

■ Appellees are in the exact same position as appellant Miller was. Appellees have asserted that the Customs Service has failed to follow its statutory duty, *i.e.,* to collect the appropriate tariffs from RAJ and Citicorp. The procedure through which such an assertion should have been raised was section 1516, notwithstanding appellees' citation to *Timken Co. v. Simon,*

539 F.2d 221, 176 U.S.App.D.C. 219 (1976), which was decided under a completely different jurisdictional and trade law framework. Appellees' failure to file a section 1516 protest renders jurisdiction under section 1581(b) impossible because the statute's basic jurisdictional premise—a protest and denial—is missing. Appellees may not circumvent the proper jurisdictional statute by asserting that their decision not to proceed under the proper congressional mechanism renders their available remedies manifestly inadequate. *Id.* As the court noted in *American Air Parcel Forwarding Co.,* 718 F.2d at 1550, 2 Fed.Cir. (T) at 4:

> We entirely agree with the Court of International Trade that the traditional avenue of approach to the court * * * was not intended to be so easily circumvented, whereby it would become merely a matter of election by the litigant. By artful pleading alone a litigant would be able to change the entire statutory scheme Congress has established.

Appellees' reliance on section 1581(i) for jurisdictional grant of authority is therefore misplaced. Subsection (i) is strictly limited in its scope and purpose.

> Subsection (i) is * * * not [intended] to create any new causes of action not founded on other provisions of law.

> The purpose of this broad jurisdictional grant is to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the district courts and the Court of International Trade.

H.R. No. 1235, 96th Cong., 2d Sess., at 47, *reprinted in* 1980 Code Cong. & Admin. News 3729, 3759.

Not only does the legislative history provide support for the limited interpretation of section 1581(i) but *United States v. Uniroyal, Inc.,* 687 F.2d 467 (CCPA 1982), conclusively establishes this circuit's view on just such an interpretation.

> [T]he legislative history of the Customs Court Act of 1980 demonstrates that Congress did not intend the Court of International Trade to have jurisdiction over appeals concerning completed trans-

actions when the appellant had failed to utilize an avenue for effective protest before the Customs Service.

*Id.* at 471.

Appellees improperly asserted jurisdiction under section 1581(i) as an independent matter and the trial court was erroneous in its predication of jurisdiction under this subsection. The trial court's finding that existing remedies were beyond the scope of section 1516 erroneously rested on the court's interpretation of section 1581(i) as an independent grant of jurisdiction to disregard limitations stated elsewhere.

The general rule of statutory construction the trial court violated in invoking section 1581(i) is that where Congress has prescribed in great detail a particular track for a claimant to follow, in administrative or judicial proceedings, and particularly where the claim is against the United States or its officials in their official capacity, the remedy will be construed as exclusive without a specific statement to that effect. The claimant will not be allowed to sail past carefully constructed limitations simply by invoking other and more general legislation. This is so even when the general legislation might have been construed to cover the case if the specific legislation had not been enacted. A classic illustration of the rule is *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The original Civil Rights Act of 1964 banned discrimination in employment, but failed to cover federal employees. This was remedied by 1972 legislation codified as 42 U.S.C. § 2000a–16. Brown prosecuted a discrimination complaint against GSA. After losing in administrative review, he sued but not within 30 days as the 1972 legislation required. He asserted his suit was still timely under other laws. The district court dismissed for lack of subject-matter jurisdiction, the court of appeals affirmed, and so did the Supreme Court. The following quote will plainly show the technique of statutory construction the majority employed:

> The balance, completeness, and structural integrity of § 717 are inconsistent with the petitioner's contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative judicial relief. His view fails, in our estimation, to accord due weight to the fact that unlike these other supposed remedies, § 717 does not contemplate merely judicial relief. Rather, it provides for a careful blend of administrative and judicial enforcement powers. Under the petitioner's theory, by perverse operation of a type of Gresham's law, § 717, with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible. The crucial administrative role that each agency together with the Civil Service Commission was given by Congress in the eradication of employment discrimination would be eliminated "by the simple expedient of putting a different label on [the] pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489–490 [93 S.Ct. 1827, 1836, 36 L.Ed.2d 439] (1973). It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.

*Brown*, 425 U.S. at 832–33, 96 S.Ct. at 1968 (footnote omitted).

Similarly the Supreme Court reversed a decision by our predecessor, the Court of Claims, that a Medicare B provider could sue the United States under the Tucker Act, 28 U.S.C. § 1491. Such Medicare B providers were intentionally left out of the review provisions of the Medicare Act itself, but they did not expressly repeal the Tucker Act in whole or in part. *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). In *Fiorentino v. United States*, 607 F.2d 963, 221 Ct.Cl. 545 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980), the Court of Claims held, following *Brown v. GSA*, any consent to a suit brought by a federal employee, that otherwise existed, to remove derogatory material from his personnel file, was preempted by the Privacy Act of 1974, 5 U.S.C. § 552a. The proper jurisdictional predicate for an American

manufacturer's protest of an administrative determination for imported merchandise is section 1581(b), not (i). Appellees' failure to pursue a protest pursuant to section 516, of the 1930 Tariff Act, divested the Court of International Trade of subject-matter jurisdiction over this case.

### C. Administrative Procedure Act Jurisdiction

Appellees also argue that the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* (APA), grants the Court of International Trade jurisdiction to review the Customs Service actions in question. We disagree. *See, e.g., Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 607 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978); *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Rhodes v. United States,* 760 F.2d 1180 (11th Cir. 1985) (Nichols, J.). *See also Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed. 2d 402 (1976) (for complete analysis of appropriate statutory construction of general jurisdictional statutes). Precedents of the Supreme Court and this circuit succinctly dispense with appellees' arguments.

> [C]lear precedent exists that the APA is not a jurisdictional statute and does not confer jurisdiction on a court not already possessing it.

*American Air Parcel,* 718 F.2d at 1552; *Califano v. Sanders, supra; Rhodes, supra.*

It is interesting to note the number of times the issue of APA independent jurisdictional authority arises in other circuits and the United States Claims Court. In each case, the courts definitively state that no separate and distinct authority exists in the APA to grant courts jurisdiction. *See, e.g., Matter of Chicago, Milwaukee, St. Paul & Pacific RR Co.,* 799 F.2d 317, 335 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2460, 95 L.Ed.2d 869 (1987); *Assiniboine & Sioux Tribes v. Board of Oil & Gas,* 792 F.2d 782, 793 (9th Cir.1986); *Lee v. Blumenthal,* 588 F.2d 1281, 1283 (9th Cir.1979); *Walker v. United States,* 11 Cl.Ct. 77, 81 (1986); *Yancey v. United States,* 10 Cl.Ct. 311, 315 (1986); *J.W. Pope*

*v. United States,* 9 Cl.Ct. 479, 487 (1986); *Larsen v. Hoffman,* 444 F.Supp. 245, 255 (D.D.C.1977) *disapproved on other grounds, sub. nom, Stone v. United States,* 683 F.2d 449 (D.C.Cir.1982).

In *Califano v. Sanders* the Supreme Court confronted the precise APA jurisdictional issue in question here. Respondent had filed a Social Security claim which was denied. Seven years later respondent re-filed his claim and exhausted the proper administrative remedies, ending with a denial of all claims by an administrative law judge on the basis of *res judicata.* Appeal was taken to the district court, which held that it had no jurisdiction under 42 U.S.C. § 405(g). The court of appeals agreed, but held that 42 U.S.C. § 405(h), a separate provision of the same statute, did not preclude review of the courts because section 10 of the APA granted courts independent jurisdiction without regard to the amount in controversy. *Sanders,* 430 U.S. at 103–04, 97 S.Ct. at 983. The court of appeals cited several Supreme Court cases for the proposition that the APA established this independent jurisdictional authority.

In reversing, the Supreme Court clearly delineated the scope of jurisdiction authorized by the APA. It held that "the better view is that the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions." *Id.* at 105, 97 S.Ct. at 984. Additionally, Justice Brennan noted that the authority to hear cases must be established by outside statutory law, not the APA.

> Title 5 U.S.C. § 702 makes clear that a person wronged by agency action "is entitled to judicial review thereof." But § 703 suggests that this language was not intended as an independent jurisdictional foundation, since such judicial review is to proceed "in a court specified by statute" or "in a court of competent jurisdiction." Both of these clauses seem to look to outside sources of jurisdictional authority.

*Id.* at 106 n. 6, 97 S.Ct. at 984 n. 6.

The instant case represents a situation similar to *Sanders* insofar as appellees seek to establish jurisdiction under the mis-

perceived independent grant of the APA. Appellees have erred.

The Court of International Trade lacked the authority pursuant to section 1581 to review the Customs Service actions because appellees failed to follow the congressionally mandated course of action for such review. The APA cannot be used to circumvent properly authorized statutory relief.

## II. Section 1514 Finality Determinations

As noted earlier, section 1514 provides for finality of determinations. Appellants raise the issue of whether the shipments liquidated prior to the opinion issued by Judge Aquilino in May of 1986 were finalized pursuant to the provisions of section 1514. They argue that the required statutory period of 90 days had run, making the importations and duties paid final and binding on the government and any and all parties in question. The importation and dissemination of the ethanol shipments anticipated a liquidation by Customs which was subject to the 90 days time period for finalization. Pursuant to 19 U.S.C. § 1514(a), liquidation is final and conclusive upon all persons, including the United States and any of its officers. *See also* 19 C.F.R. § 159.1 (1987) (defining liquidation as "the final computation or ascertainment of the duties or drawbacks accruing on an entry"); *Ambassador Division of Florsheim Shoe v. United States*, 748 F.2d 1560, 1562 (Fed.Cir.1984). According to *Florsheim*, by section 1504, an entry must be liquidated within a year, with exceptions not here applicable. If Customs is not to preclude assessment of added duties, it must suspend liquidation for one of the approved reasons, otherwise it is "deemed" liquidated. Since here Customs did not suspend, and was not ordered to, the liquidations were made and were final after 90 days. The court tried to get around this by ordering payments without reliquidation, but this it could not do. It was trying to reliquidate in a non-statutory manner by calling its act something else.

## III. Standing

The court does not review the standing determinations made by Judge Aquilino, because our analysis would be moot in light of the court's ultimate decision regarding jurisdiction.

## IV. Conclusion

Appellees fail to convince this court that any of their contentions merit affirmance of the Court of International Trade decision. Appellees' proper route for review rested within the congressionally mandated framework of section 1516. The Court of International Trade's jurisdiction would then be premised upon section 1581(b), rather than section 1581(i). We disagree with the Court of International Trade's determinations that section 1516 remedies would have been manifestly inadequate. Rather, appellees' retroactive relief is totally unavailable under any trade law. Therefore their requested relief is not manifestly inadequate, but rather completely inappropriate. The unarticulated assumption of "manifestly inadequate" relief is that the relief sought is proper within the statutory framework. As indicated earlier, appellees fail to satisfy this basic premise.

In addition, appellees erroneously premise jurisdiction not only on section 1581(i), but on the provisions of the APA. The Supreme Court and the Federal Circuit have answered this question point-blank with a resounding no. Nothing further need be said except that appellees are referred to the *Califano v. Sanders*, the *Charlestone Stone Products Co.*, the *Air Parcel*, and the *Rhodes* decisions for enlightenment on the subject. The Court of International Trade's decision is reversed and remanded for dismissal in accordance with this opinion.

REVERSED AND REMANDED.

## APPENDIX

### 19 U.S.C. § 1516

**§ 1516. Petitions by domestic interested parties**

**(a) Request for classification and rate of duty; petition**

(1) The Secretary shall, upon written request by an interested party furnish the classification and the rate of duty imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by such interested party. If the interested party believes that the appraised value, the classification, or rate of duty is not correct, it may file a petition with the Secretary setting forth—

(A) a description of the merchandise,

(B) the appraised value, the classification, or the rate of duty that it believes proper, and

(C) the reasons for its belief.

(2) As used in this section, the term "interested party" means a person who is—

(A) a manufacturer, producer, or wholesaler in the United States;

(B) a certified union or recognized union or group of workers which is representative of an industry engaged in the manufacture, production, or wholesale in the United States; or

(C) a trade or business association a majority of whose members are manufacturers, producers, or wholesalers in the United States,

of goods of the same class or kind as the designated imported merchandise. Such term includes an association, a majority of whose members is composed of persons described in subparagraph (A), (B), or (C).

**(b) Determination on petition**

If, after receipt and consideration of a petition filed by such an interested party, the Secretary determines that the appraised value, the classification, or rate of duty is not correct, he shall determine the proper appraised value, classification, or rate of duty and shall notify the petitioner of his determination. All such merchandise entered for consumption or withdrawn from warehouse for consumption more than thirty days after the date such notice to the petitioner is published in the weekly Customs Bulletin shall be appraised, classified, or assessed as to the rate of duty in accordance with the Secretary's determination.

**(c) Contest by petitioner of appraised value, classification, or rate of duty**

If the Secretary determines that the appraised value, classification, or rate of duty with respect to which a petition was filed pursuant to subsection (a) of this section is correct, he shall notify the petitioner. If dissatisfied with the determination of the Secretary, the petitioner may file with the Secretary, not later than thirty days after the date of the notification, notice that it desires to contest the appraised value, classification, or rate of duty. Upon receipt of notice from the petitioner, the Secretary shall cause publication to be made of his determination as to the proper appraised value, classification, or rate of duty and of the petitioner's desire to contest, and shall thereafter furnish the petitioner with such information as to the entries and consignees of such merchandise, entered after the publication of the determination of the Secretary, at such ports of entry designated by the petitioner in his notice of desire to contest, as will enable the petitioner to contest the appraised value, classification, or rate of duty imposed upon such merchandise in the liquidation of one such entry at such port. The Secretary shall direct the appropriate customs officer at such ports to immediately notify the petitioner by mail when the first of such entries is liquidated.

**(d) Appraisal, classification, and liquidation of entries of merchandise covered by published decisions of the Secretary**

Notwithstanding the filing of an action pursuant to chapter 169 of Title 28, merchandise of the character covered by the published decision of the Secretary (when entered for consumption or withdrawn from warehouse for consumption on or before the date of publication of a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit, not in harmony with the published decision of the Secretary) shall be appraised or classified, or both, and the entries liquidated, in accordance with the decision of the Secretary and, except as otherwise provided in this chapter, the final liquidations of these entries shall be conclusive upon all parties.

**(e) Consignee or his agent as party in interest before the Court of International Trade**

The consignee or his agent shall have the right to appear and to be heard as a party in interest before the United States Court of International Trade.

**(f) Appraisement, classification, and assessment of duty of merchandise covered by published decision of the Secretary in accordance with final judicial decision of Court of International Trade or Court of Appeals for the Federal Circuit sustaining cause of action in whole or in part; suspension of liquidation of entries; publication**

If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit, merchandise of the character covered by the published decision of the Secretary, which is entered for consumption or withdrawn from warehouse for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, shall be subject to appraisement, classification, and assessment of duty in accordance with the final judicial decision in the action, and the liquidation of entries covering the merchandise so entered or withdrawn shall be suspended until final disposition is made of the action, whereupon the entries shall be liquidated, or if necessary, reliquidated in accordance with the final decision. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

**(g) Regulations implementing required procedures**

Regulations shall be prescribed by the Secretary to implement the procedures required under this section.

### 28 U.S.C. § 1581

**§ 1581. Civil actions against the United States and agencies and officers thereof**

(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

(b) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516 of the Tariff Act of 1930.

(c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930.

(d) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review—

(1) any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974 with respect to the eligibility of workers for adjustment assistance under such Act;

(2) any final determination of the Secretary of Commerce under section 251 of the Trade Act of 1974 with respect to the eligibility of a firm for adjustment assistance under such Act; and

(3) any final determination of the Secretary of Commerce under section 271 of the Trade Act of 1974 with respect to the eligibility of a community for adjustment assistance under such Act.

(e) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review any final determination of the Secretary of the Treasury under section 305(b)(1) of the Trade Agreements Act of 1979.

(f) The Court of International Trade shall have exclusive jurisdiction of any civil action involving an application for an order directing the administering authority or the International Trade Commission to make confidential information available under section 777(c)(2) of the Tariff Act of 1930.

(g) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review—

(1) any decision of the Secretary of the Treasury to deny a customs broker's license under section 641(b)(2) or (3) of the Tariff Act of 1930, or to deny a customs broker's permit under section 641(c)(1) of such Act, or to revoke a license or permit

under section 641(b)(5) or (c)(2) of such Act; and

(2) any decision of the Secretary of the Treasury to revoke or suspend a customs broker's license or permit, or impose a monetary penalty in lieu thereof, under section 641(d)(2)(B) of the Tariff Act of 1930.

(h) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

(j) The Court of International Trade shall not have jurisdiction of any civil action arising under section 305 of the Tariff Act of 1930.

## § 1514. Protest against decision of appropriate customs officer

### (a) Finality of decisions; return of papers

Except as provided in subsection (b), of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds and errors), and section 1521 of this title (relating to reliquidations on account of fraud), decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or any modification thereof;

(6) the refusal to pay a claim for drawback; and

(7) the refusal to reliquidate an entry under section 1520(c) of this title,

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the appropriate customs officer, who shall take action accordingly.

## (b) Finality and conclusiveness of customs officers' determinations

With respect to determinations made under section 1303 of this title or subtitle IV of this chapter which are reviewable under section 1516a of this title, determinations of the appropriate customs officer are final and conclusive upon all persons (including the United States and any officer thereof) unless a civil action contesting a determination listed in section 1516a of this title is commenced in the United States Court of International Trade.

## (c) Form, number, and amendment of protest; filing of protest

(1) A protest of a decision under subsection (a) of this section shall be filed in writing with the appropriate customs officer designated in regulations prescribed by the Secretary, setting forth distinctly and specifically each decision described in subsection (a) of this section as to which protest is made; each category of merchandise affected by each such decision as to which protest is made; and the nature of each objection and reasons therefor. Only one protest may be filed for each entry of merchandise, except that where the entry covers merchandise of different categories, a separate protest may be filed for each category. In addition, separate protests filed by different authorized persons with respect to any one category of merchandise that is the subject of a protest are deemed to be part of a single protest. A protest may be amended, under regulations prescribed by the Secretary, to set forth objections as to a decision or decisions described in subsection (a) of this section which were not the subject of the original protest, in the form and manner prescribed for a protest, any time prior to the expiration of the time in which such protest could have been filed under this section. New grounds in support of objections raised by a valid protest or amendment thereto may be presented for consideration in connection with the review of such protest pursuant to section 1515 of this title at any time prior to the disposition of the protest in accordance with that section. Except as provided in sections 1485(d) and 1557(b) of this title,

protests may be filed with respect to merchandise which is the subject of a decision specified in subsection (a) of this section by—

(A) the importers or consignees shown on the entry papers, or their sureties;

(B) any person paying any charge or exaction;

(C) any person seeking entry or delivery;

(D) any person filing a claim for drawback; or

(E) any authorized agent of any of the persons described in clauses (A) through (D).

(2) A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with such customs officer within ninety days after but not before—

(A) notice of liquidation or reliquidation, or

(B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

A protest by a surety which has an unsatisfied legal claim under its bond may be filed within 90 days from the date of mailing of notice of demand for payment against its bond. If another party has not filed a timely protest, the surety's protest shall certify that it is not being filed collusively to extend another authorized person's time to protest as specified in this subsection.

## (d) Limitation on protest of reliquidation

The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the customs officer upon any question not involved in such reliquidation.

## ORDER

We are confronted with an unusual kind of post-opinion motion which complains of a wrong done in our opinion to counsel, not the party counsel represented. It says the court "chides" counsel, to the injury of his standing and reputation, by imputing to counsel, and refuting, an argument counsel did not make.

Counsel should be assured, if this court intends to "chide" anyone, as for example for making a frivolous argument, we know how to do so in express language. If such language is not included in an opinion, no intent to "chide" is present and none should be inferred.

The matter here is one of semantics. Counsel certainly relied on the Administrative Procedures Act (APA), 5 U.S.C. § 702 and ff, to support the exercise of jurisdiction that occurred in the trial court, erroneous as we held and as the motion does not deny. Only, counsel say, they intended to rely on the APA, not as granting jurisdiction to the trial court all by itself, but as substantive law backing the trial court's exercise of jurisdiction under 28 U.S.C. § 1581(i). Since, either way, the argument was unsound, it is not a matter of much moment whether it was, actually, one or the other.

The motion is denied.

MAYER, Circuit Judge, concurring.

The court's opinion on the merits states that National Corn Growers Association *et al.* argued that "the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* (APA), grants the Court of International Trade jurisdiction to review the Customs Service actions in question." Slip op. at 1559 (Fed. Cir. Feb. 9, 1988). My review of the oral argument and briefs shows that National Corn Growers actually said that the Court of International Trade "properly exercised its jurisdiction under [28 U.S.C.] § 1581(i) to review [National Corn Growers'] cause of action under the APA." But I agree with the court that there is no need to change the opinion because of this semantical difference; the outcome remains the same and this order serves to confirm that no criticism of counsel was intended.