Jeanette P. RHODES and Oscar Earl Rhodes, Plaintiffs-Appellees,

v.

The UNITED STATES of America, and Clifford Alexander, Secretary of the Army, Defendants-Appellants.

No. 84–8123.

United States Court of Appeals, Eleventh Circuit.

May 20, 1985.

---

Washington, D.C., for defendants-appellants.

Percy J. Blount, Augusta, Ga., for plaintiffs-appellees.

Before HENDERSON and HATCHETT, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge:

The threshold and dispositive issue in this case is whether a United States district court has subject matter jurisdiction to review a decision by the Secretary of the Army denying a claim under 32 U.S.C. § 715, disapprove the same, and remand the case to the Secretary for reconsideration, despite the statutory preclusion of review of such a decision in § 715(g) and (h). We hold that the court lacked jurisdiction and *reverse.*

### Facts

This case has had a prolonged and unhappy career. Major John Shealy, an officer of the Georgia National Guard on temporary training duty, on June 12, 1973 was involved in a collision on a Georgia highway in which he lost his life and the Rhodes, in the other car, were severely injured. The car Shealy was driving was United States Government property and he had been permitted to use it to register for a course at a Georgia college in furtherance of his civilian career. His immediate destination was, however, a military post. Because Shealy as a Guard officer was not a federal employee, the Rhodes had no claim against the government cognizable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 and ff, as it then was. Accordingly they filed a claim under 32 U.S.C. § 715, which provides, among other things, for settlement of claims up to $25,000 for injury inflicted by members of the Army National Guard while engaged in

Edmund A. Booth, Jr., Asst. U.S. Atty., Augusta, Ga., William Kanter, Peter R. Maier, U.S. Dept. of Justice, Civ. Div.,

* Honorable Philip Nichols, Jr., U.S. Circuit Judge     for the Federal Circuit, sitting by designation.

training duty and within the scope of their employment. The Chief of the Army Claims Service rejected the claim holding that Shealy was not acting within the scope of his employment.

Section 715 ends with the following preclusory provisions:

(g) Notwithstanding any other provision of law, the settlement of a claim under this section is final and conclusive.

(h) In this section, "settle" means consider, ascertain, adjust, determine, and dispose of a claim, whether by full or partial allowance or disallowance.

Disregarding this, claimants filed a suit in the Southern District of Georgia for a declaratory judgment, and obtained one. The government appealed and argued statutory preclusion based on § 715(g) and (h) as well as failure to exhaust administrative remedies. The reversal and remand, *Rhodes v. United States*, 574 F.2d 1179 (5th Cir.1978), passes over the preclusion defense and relies entirely on failure to exhaust, though intimating rather broadly that the Army position was unwarranted. At any rate, claimants did exhaust, to no avail, as the Army refused to modify its ruling. The new and present complaint makes the necessary allegations of exhaustion. A district court order of April 4, 1980, denied cross-motions for summary judgment, but opines in favor of the Rhodes claimants. The preclusion question is answered by recourse to the "basic presumption of judicial review to one 'suffering legal wrong because of agency action * * *.' " *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (quoting 5 U.S.C. § 702). The preclusion language is passed over by the contention that finality in administrative procedure was all that Congress intended, and this is substantiated in the court's eyes by reference to legislative history. "Clear and convincing evidence of Congressional intent" is not found, the search for it by the court having been perhaps not overly eager. The defense of sovereign immunity is likewise thrust aside. Reasons are then found why Major Shealy was acting within

the scope of his employment. Summary judgment was not awarded the plaintiffs only because some of the facts relied on by them appeared only in unsworn statements. While one might have thought plaintiffs were pretty close to victory at that point, actually it eluded them for almost four more years. The court (a different judge) entered an order December 15, 1983, setting aside the Secretary's adverse decision and remanding for reconsideration. Judgment was entered accordingly, from which the government again appeals.

### Discussion

This case has taken so long and presented such difficulty, probably because it involves a small eddy of law that flows upstream contrary to the thrust of a mighty torrent. While Congress, the public, and the courts themselves vie in imposing new tasks of judicial review upon an already overloaded federal judiciary, so that one sometimes wonders if there is any decision judges will not eventually be required to make, there are a small number of instances when Congress has expressly or impliedly legislated on the view that decision-making by lawyers and judges, with judicialized procedures, are not for the benefit of the parties directly concerned. *See, e.g., Woodrum v. Southern Railway Co.*, 750 F.2d 876 (11th Cir.1985). These instances seem anomalous to many minds, and much cerebral effort is devoted to finding ways to avoid them by persons not comfortable with them, as it is supposed there is no error or mistake the executive or legislative branches can make that the courts should not correct, or that a legal right is not really a legal right unless there is a court to enforce it.

The district court here observed the existence of preclusion language, but supposed it was directed at other agencies than itself, the General Accounting Office (GAO), perhaps. The presumption for judicial review of administrative action of *Abbott Laboratories*, 387 U.S. at 140, 87 S.Ct. at 1511, was made to do duty as it so often has, with the requirement for "clear and convincing evidence" of a contrary intent.

The court did not, when it spoke, have the benefit of *Block v. Community Nutrition Institute,* —— U.S. ——, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). Had it been otherwise, we believe the result would have been different. Our highest Court has, without dissent, restated and clarified the techniques by which one goes about determining the existence of congressional intent to override the *Abbott Laboratories v. Gardner* presumption. Like all presumptions, it "may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *Id.* at ——, 104 S.Ct. at 2456. It may also "be overcome by inferences of intent drawn from the statutory scheme as a whole." *Id.* The "clear and convincing evidence" standard is explained not to mean "unambiguous proof, in the traditional evidentiary sense," but rather whether the intent is " 'fairly discernable in the statutory scheme.' " Id. at ——, 104 S.Ct. at 2457 (quoting *Data Processing Service v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 832, 25 L.Ed.2d 184 (1970)). The so-called test is "but a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Block,* —— U.S. at ——, 104 S.Ct. at 2457.

The district court also relied on the Administrative Procedures Act (APA) which, in 5 U.S.C. §§ 701, 702, consents to suits against the government brought under many laws, if one is seeking equitable or mandamus relief only and not money from the Treasury. It also excludes cases where liability is precluded expressly or by implication, so it says nothing to bypass express or implied preclusion in other law, and confers no jurisdiction to do so. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

The Supreme Court has been willing to find implied preclusion in the general structure of the statutory scheme without the presence of any express preclusion. This is true of *Block v. Community Nutrition Institute, supra.* Such an implied preclu-

sion is found much less willingly if it is invoked to preclude access to a court to enforce a nonfrivolous constitutional right. *See Califano v. Sanders, supra.* See also *United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). That is not a problem here.

Here express language is present, and to that extent the case for preclusion is stronger. We may note, however, that even apart from this factor, the express preclusion, as the district court supposed, of review other than judicial review only, would be anomalous. Thereby the courts would be denied the benefit they would otherwise derive from a screening of claims by officials having expertise. They would be obliged to plunge into the cases cold, as it were. A statutory scheme that precludes not all review, but only review other than judicial review, is certainly no favor to the courts, and no reason is apparent why they should presume in favor of congressional intent to establish such a scheme.

That more was intended to be precluded than review by the GAO is plain in the legislative history. H.R.Rep. No. 1928, 86th Cong., 2d Sess. 1, *reprinted in* 1960 U.S. Code Cong. & Ad.News 3492, sets the matter forth with perfect clarity. The Committee on the Judiciary had before it a bill, H.R. No. 5435, to extend Federal Tort Claims Act coverage to members of the National Guard while engaged in training duty. The latter Act, 28 U.S.C. § 2671 and ff, and 28 U.S.C. § 1346(b), consented to suits against the government for torts of federal employees, but did not include torts by members of the National Guard on training duties until the amendment effected by Pub.L. No. 97–124, too late to avail the plaintiffs here, as it applies only to claims arising after December 31, 1981. H.R. No. 5435 was an earlier attempt towards the same end, but it miscarried. The Secretary of the Army urged, and the committee agreed, that extension of the Tort Claims Act provision for "judicial relief" would be inappropriate inasmuch as the members of the National Guard on training duty were not "in active federal

service." The Committee went further and reported an amendment incorporating the compromise suggestion the Secretary submitted in the following words:

> While it is not considered appropriate to grant *judicial* relief against the United States under the Federal Tort Claims Act to claimants who have sustained damage to their property, or injury to their persons, or death, by reason of activities of members of the National Guard not in active Federal service, it is considered appropriate to make provision for the *administrative* relief of such claimants to the same extent as relief would be afforded under section 2733 of title 10, United States Code, if the damage or injury had resulted from the activities of a member of the Armed Forces or a civilian employee of the military departments acting within the scope of his employment or incident to noncombat activities of a military department. [Emphasis supplied.]

H.R.Rep. No. 1928, 1960 U.S.Code Cong. & Ad.News at 3497.

Nothing could be clearer. The Secretary supposed, and the Committee agreed, that *judicial* relief would follow from extension of the Tort Claims Act, whereas only *administrative* relief would be afforded if the analogy of 10 U.S.C. § 2733, which contains preclusive language, were followed. He did not want to extend § 2733 because the bill, if enacted, would deal with torts by a different class of persons, not in federal service. Hence the placement of the amended bill, as passed, in the code as part of the National Guard statutes, 32 U.S.C. § 715, rather than in Title 10.

That the Secretary correctly construed 10 U.S.C. § 2733 is held in *Broadnax v. United States Army,* 710 F.2d 865 (D.C.Cir.1983); *Labash v. United States,* 668 F.2d 1153 (10th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982). Its provisions for preclusion are identical to those we must construe. Apparently § 2733 remains of importance as authority for settling tort claims against the Army not cognizable under the Tort Claims Act, *e.g.,* those arising in a foreign country.

■ We add that the plaintiffs' claim is a money claim. As it sounds in tort, it is not within district court jurisdiction under the "Little Tucker Act," 28 U.S.C. § 1346(a)(2). It was not within the Tort Claims Act because the person committing the tort was not a federal employee. Under the landmark case *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), consent of the United States to be sued "cannot be implied but must be unequivocally expressed." *Id.* at 399, 96 S.Ct. at 954. A money claim which can be assuaged only by expenditure from the Treasury of the United States cannot be entertained without a statutory grant of jurisdiction to a United States court, and dressing it up as a review under the APA does not help at all. *Califano v. Sanders, supra; Hawaii v. Gordon,* 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); *Maier v. Orr,* 754 F.2d 973 (Fed.Cir.1985). It therefore would be in this case a pertinent question, were there no express preclusionary provision, if the district court has jurisdiction here, where did it come from? This was no problem for the district court because it mistakenly believed that the APA was a law that conferred jurisdiction. It is a serious problem for us.

The Supreme Court has held that a preclusionary provision, even more express than the one at bar, does not exclude courts from intervening where—

> there has been "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination" [the *"Scroggins"* formula].

*Lindahl v. Office of Personnel Management,* —— U.S. ——, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (quoting *Scroggins v. United States,* 397 F.2d 295, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968).

This is however in a context where the majority of the Court, though not all, found in the legislative history strong indications

that the Congress had not meant as rigorous a preclusion as its words implied. A previous version of the statute, an entitlement to disability annuities for civil servants, had been rightly or wrongly construed by lower courts as not providing a preclusion in the case supposed. These decisions were called to the attention of Congress, and in the view of the Supreme Court, adopted by Congress as the meaning intended, while amending the statute in other respects. There is no history of that kind here, and instead we have a legislative report that declares without ambiguity that preclusion is complete. In an earlier case the Court of Claims had undertaken to apply the *Scroggins* formula where the legislative history lent it no support, a Medicare "B" claim, and the Supreme Court shot the notion down in flames. *United States v. Erika, supra.* It would appear, therefore, that *Lindahl* is not authority for applying this *Scroggins* formula where legislative history support does not exist. The formula is also referred to in *Broadnax v. United States Army, supra,* but with the comment that the issues before the court do not give it a scope for application, meaning apparently that there is no constitutional issue to adjudicate. It is a formula for giving partial but not complete effect to a statutory preclusion.

■ What fields the *Scroggins* formula may come to be applied in is hard to say. Preclusionary provisions are found here and there in the United States Code. When they involve money claims to be paid, if allowed, from the Treasury of the United States, there seems to be some tension between the *Abbott Laboratories v. Gardner* presumption of reviewability and the statement that consent of the United States to be sued cannot be implied but must be unequivocally expressed. When we move from one statute to another we are likely to find varying treatment with no effort to develop any overall principles of adjudication, and perhaps it is wise not to attempt them. It would seem the *Scroggins* formula should not be for application where, as here, the claim, if allowed, is allowed not as an entitlement, but as a gratuity. The

original Tort Claims Act did not so much change the law as remove the barrier to enforcement of what were always legal rights only unenforceable because of sovereign immunity. On the other hand, to impose tort liability on the employer for negligence of persons not employees is to grant a benefit on one and a burden on the other not previously known to the law. Next, the *Scroggins* formula is only appropriate when, but for the preclusionary language, the court would have had jurisdiction. It interprets the preclusion away in part. That is not the case here, but was in *Lindahl,* as the Supreme Court undertook to demonstrate. The *Scroggins* formula cannot be used as itself the source of jurisdiction not otherwise granted. Finally, the issues here, should we take jurisdiction, would not present an outrage of the kind the formula was coined to reserve power to deal with.

The court below took issue with the Army on account of differing interpretations of an Army regulation defining "scope of employment" as—

> expressly or impliedly directed or authorized by competent authority, or within the design, aim, purpose, or instructions of the unit's or organization's mission, or in the interest of the Government.

This was apparently to be determined independent of the state law of Georgia, which would have defined "scope of employment" under the Tort Claims Act. While Major Shealy was undeniably traveling to register for a course in a civilian college for his advancement in civilian life, not in the military, there was evidence that his superior considered his continued education to contribute to his effectiveness as an officer. Certainly his superior officers approved sufficiently to permit, not only his absence from the post, but also his use of a government car. The definitions of "authorize" in Webster's Unabridged Dictionary run to considerable length and the entire gamut from mere acquiescence to the kind of approval which endows the person authorized with some of the powers of the authorizing authority. For example, when Congress

"authorizes" a government program, it certainly says more than that Congress doesn't care what the agencies authorized may do.

Here the district court took the former and more inclusive view of what constitutes authorization, and the Army the less inclusive one. The issue would seem one where reasonable minds could differ, as they have, but we do not undertake to decide it.

■ So far as the difference of opinion was one of fact, it was clearly not within the *Scroggins* formula, and so far as it was as to the meaning of the word "authorized" as apparently it largely was, the Army was entitled to some respect as to its interpretation of a regulation it had itself written, and itself administered. The court took the APA as its "authorization" to lift the decision of this issue from the military and endow on itself: a burden that Act cannot bear, as we have shown. We see nothing to suggest that the *Scroggins* formula, if invoked, would serve the court's purpose any better. Accordingly, a remand by us to consider the impact of the *Scroggins* formula would not be in the interests of justice.

■ This final order of the lower court seems to suggest in its wording, a belief that a court not having subject-matter jurisdiction may nevertheless remand a money claim to an entity that does have such jurisdiction, with directions how to proceed. It is, however, too clear for argument that a court not having subject-matter jurisdiction of a money claim, or authority to transfer it to another court having such jurisdiction, can do nothing with it but dismiss it. *United States v. Testan, supra; Woodrum v. Southern Railway, supra.*

### Conclusion

Accordingly, the judgment of the district court is reversed, and the cause is remanded with directions to dismiss the claim.

REVERSED and REMANDED.