**AT&T CORPORATION, Plaintiff,**

v.

**U.S. POSTAL SERVICE, Defendant.**

**No. 96 C 4573.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 20, 1997.

Order Denying Reconsideration
July 28, 1997.

---

Fay Clayton, Robinson, Curley & Clayton, P.C., Chicago, IL, Ron R. Hutchinson, Gerard F. Doyle, Todd R. Metz, Doyle & Bachman, Washington, DC, for AT&T Corp., plaintiff.

John J. George, Michael Daley, Mark G. Vanecko, Daley and George, Ltd., Chicago, IL, Robert T. Oleszkiewicz, Dennis J. Aukstik, Chris Anthony Leach, Richard A. Toth, Catherine Wilson Murnane, Daley & George Ltd., Chicago, IL, for Public Communications Services, intervenor.

Matthew David Tanner, U.S. Attorney's Office, Chicago, IL, for U.S. Postal Service, defendant.

## ORDER

GOTTSCHALL, District Judge.

On July 24, 1996, AT & T filed an action for declaratory and injunctive relief relating to a series of sole-source contracts entered into by the defendant, the United States Postal Service, and Public Communication Services ("PCS") for the management of public pay telephones in various locations across the U.S.

On August 29, 1996, the Postal Service filed a motion to dismiss on the grounds that (1) AT & T lacks standing to challenge alleged violations of the Postal Service's procurement regulations; (2) the Postal Service's procurement decisions are not judicially reviewable; and (3) AT & T has not alleged a proper basis for a breach of contract claim.

The third issue is easily resolved. In its brief in opposition to the motion to dismiss, AT & T states that it did not intend to plead a breach of contract claim in the complaint. Therefore, the motion to dismiss on this basis is moot.

The court will consider the issue of judicial review prior to determining whether AT & T has standing to bring this action. The requisite inquiry is whether this court has authority to review the procurement decisions of the Postal Service. The issue was squarely addressed by the Seventh Circuit in a factually similar case, *Peoples Gas, Light and Coke Co. v. United States Postal Serv.*, 658 F.2d 1182 (7th Cir.1981). In *Peoples Gas*, the Seventh Circuit held that an invitation for bids to construct an electrically-powered heating plant was judicially reviewable.

The substantive basis for jurisdiction in *Peoples Gas* was found in two provisions of the Postal Reorganization Act, 39 U.S.C. § 401(2) and (3), which authorize the Postal Service to make rules and regulations relating to procurement needs. Regulations promulgated by the Postal Service provided law

to apply in the review action. However, the court went on to address whether, in the absence of specific language in the act creating a right of review, the regulations afforded a private right of action.

 Several Supreme Court cases provided the requisite analytical framework. Judicial review of administrative actions taken pursuant to a statute or regulation "is the rule." *Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (citation omitted). Where there is no statutory command prohibiting review, the party asserting nonreviewability has "the heavy burden of overcoming the strong presumption that Congress did not mean to prohibit all judicial review." *Dunlop v. Bachowski,* 421 U.S. 560, 567, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). This presumption in favor of review remains "unless a contrary purpose is fairly discernible in the statutory scheme." *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

The Seventh Circuit considered the following factors when analyzing the reviewability issue in *Peoples Gas:* "A judicial determination of Congressional intent, the functional needs of the agency for flexibility and discretion, and the capacity of the courts to resolve issues presented to them." 658 F.2d at 1191 (quoting *National Ass'n of Postal Sup'rs v. United States Postal Serv.,* 602 F.2d 420, 429 (D.C.Cir.1979)). The Postal Service argued that the court could infer a congressional intent to preclude review because § 410 of the act exempted the Postal Service from all federal law dealing with public or federal contracts and from the Administrative Procedure Act. The Seventh Circuit determined that these particular exemptions were not sufficient to foreclose review of alleged violations of the Postal Service's regulations.

The case at bar involves the current versions of the same statute, the Postal Service Reorganization Act, and its related regulations in the Procurement Manual (incorporat-

ed by reference at 39 C.F.R. § 601.100). In this action, AT & T relies on §§ 1.7.2.a, 4.4.1.b and 4.4.1.c of the Procurement Manual. Section 1.7.2.a states that "[p]urchases must be made on the basis of adequate competition whenever feasible" and that "[a]dequate competition means the solicitation and participation of a sufficient number of capable sources to ensure that the required quality and quantity of goods and services is obtained when needed, and that the price is fair and reasonable." Section 4.4.1.b states that "[n]oncompetitive purchasing methods may be used only when competitive purchasing is not feasible or appropriate." Section 4.4.1.c outlines eighteen exceptions to·the use of competitive purchasing methods.

The parties have not cited any changes to the statute, its regulations or its legislative history which would prevent this court from adopting the reviewability analysis in *Peoples Gas.* However, since the decision in *Peoples Gas,* the Supreme Court has clarified the law on the issue of judicial review of administrative actions. *E.g., Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) and *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). As a result, the Postal Service would now like this court to find that these Supreme Court pronouncements require the application of a new standard in analyzing reviewability. Yet, *Block* and *Fausto* did not enunciate a new standard, but simply elucidated the old standard. The Supreme Court in *Block* criticized the lower court for applying the "clear and convincing evidence" standard in a strict evidentiary sense: "[W]here substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling. That presumption does not control in cases such as this one, however, since the congressional intent to preclude judicial review is 'fairly discernible' in the detail of the legislative scheme." *Block* at 351, 104 S.Ct. 2450. *See also Fausto* at 452, 108 S.Ct. 668.

In reviewing the reasoning in *Peoples Gas,* this court is not persuaded that the decision reached by the Seventh Circuit is undermined by subsequent Supreme Court doc-

trine or rendered inapplicable thereby to the instant case. In fact, unlike other circuits, the Seventh Circuit has not announced a need to change its application of the *Abbott Laboratories* "clear and convincing evidence" standard as a result of *Block* or *Fausto*. *See, e.g., Commonwealth Edison Co. v. United States Nuclear Regulatory Comm'n,* 830 F.2d 610, 613–14 (7th Cir.1987); *Owens v. Brock,* 860 F.2d 1363, 1368 (6th Cir.1988); *Rhodes v. United States,* 760 F.2d 1180, 1182–83 (11th Cir.1985). There is no evidence that the Seventh Circuit in *Peoples Gas* applied the "clear and convincing" standard in the strict evidentiary sense criticized by the Supreme Court in *Block* and *Fausto*.

Although *Block* and *Fausto* provide a framework for analyzing reviewability, the statutory schemes analyzed in those cases are distinguishable from the instant case. In *Block,* the Court determined that Congress had outlined a "complex and delicate administrative scheme" in the Agricultural Marketing Agreement Act which explicitly provided for dairy handler-initiated review of milk market orders issued by the Secretary of Agriculture but foreclosed such review to consumers. In *Fausto,* the Court similarly determined that the "comprehensive nature of the CSRA [Civil Service Reform Act], the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review" meant that Congress intended to preclude judicial review for those individuals. By contrast, the Postal Service Reorganization Act and related regulations are silent on the issue of judicial review of procurement decisions by any party.

■ The Postal Service argues that, under this "new" standard, review is precluded because the act expressly provides for judicial review of agency actions such as rate determinations or employment discrimination, while omitting a provision for review of procurement decisions. However, one of the cardinal principles in analyzing reviewability of agency action remains that "[t]he mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others." *Commonwealth Edison* at 613–14 (citing *Abbott Laboratories* at 141, 87 S.Ct. 1507).

Additionally, the arguments made by the Postal Service regarding whether 39 U.S.C. § 410(a), which exempts the Postal Service from the Administrative Procedure Act, precludes review are not sufficiently persuasive. The Seventh Circuit in *Peoples Gas* determined that these exemptions "do not manifest a congressional intent to foreclose all judicial review of alleged violations by the Postal Service's procurement regulations." 658 F.2d at 1191. The concurring opinion of three justices in *Air Courier Conference of America v. American Postal Workers Union, AFL–CIO,* 498 U.S. 517, 531, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991) does not alter this analysis. In that case, the American Postal Workers Union et al. challenged an international remailing regulation of the Postal Service pursuant to the judicial review provisions of the APA. The majority determined that the issue of whether 39 U.S.C. § 410(a) exempts the Postal Service from judicial review under the APA had been waived. The challenge was dismissed because the court held that the union did not have standing. The concurring justices, on the other hand, would have relied solely on the exemption from the APA to dismiss the case. However, unlike the plaintiffs in *Air Courier,* the plaintiff in the instant case has not explicitly invoked the APA as the basis for judicial review. Instead, it is relying on common law review principles which "operate apart from the subsequent codification [in the APA]." *Peoples Gas* at 1191. Neither the majority nor the concurring opinion in *Air Courier* addressed the applicability of these common law principles to the Postal Service Act and regulations.

Since this court does not find that any changes to the statutes and regulations invoked by AT & T or to Supreme Court doctrine subsequent to the *Peoples Gas* decision provide a sufficient basis to depart from clear circuit precedent, the motion cannot be granted on this ground.[1]

1. This court does recognize that the *Peoples Gas* decision was decided over fifteen years ago.

■ The remaining issue in the motion to dismiss is whether AT & T has standing to contest the Postal Service's actions. Again, the *Peoples Gas* decision provides some direction for this court although subsequent Supreme Court pronouncements have altered its precedential value. The Seventh Circuit held that the plaintiff in that case, a gas company, did not have standing to challenge the Postal Service's determination favoring electricity.

As an initial matter, the court must determine AT & T's status for purposes of analyzing standing. The court is unwilling to characterize AT & T as a disappointed bidder. Generally, where courts have found standing for a "disappointed bidder," the disappointed bidder was an actual bidder and not merely a potential bidder. The policy behind recognizing standing for a disappointed bidder lies in the ability of the government to bind a bidder into a contract. This power to bind "has long been viewed as giving rise to a correlative obligation of fair dealing on the part of the government within the terms of the solicitation." *Peoples Gas* at 1199. Here, there was no invitation to bid, no bid submitted by AT & T, and therefore no danger that AT & T could be bound by a contract.

AT & T further alleges in its complaint a present contractual relationship with the Postal Service. Beginning in 1989, AT & T had contracts with several Postal Service local purchasing authorities around the country. The terms of the contracts provided that they would automatically renew after the initial two year term for additional one year terms unless either party gave 30 days notice of an intent not to renew. Apparently with one exception, the Postal Service never directly gave such notice. However, PCS. acting as the agent of the Postal Service, did forward notice of termination of several contracts on May 21, 1996. Further, the Postal Service purchasing authority in Chicago properly notified AT & T that it would not renew AT & T's contract with that office when it expired on September 15, 1996. It is not clear from these allegations that AT & T can properly consider itself to be a present contractor. Therefore, the court views AT & T as a prospective supplier or bidder who has a competitive interest in the decision made by the Postal Service to contract with PCS.

■ To establish standing, plaintiff must show that: (1) he suffered an "injury in fact," *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984);, and (2) the injury falls within the "zone of interests" sought to be protected under the statute, *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The Postal Service does not contest AT & T's ability to satisfy the "injury in fact" requirement and thereby meet the standing requirement of Article III. On the other hand, the Postal Service argues that AT & T does not fall within the protected "zone of interests" and thus lacks standing.

Prior uncertainty in the application of the "zone of interest" test was addressed by the Supreme Court in *Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). The " 'zone of interest' test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision." *Id.* at 388, 107 S.Ct. 750. This test is not "especially demanding" meaning that "there need be no indication of congressional purpose to benefit the would-be plaintiff." *Id.* at 388–89, 107 S.Ct. 750. However, the test is not necessarily one of "universal application": "the test is most usefully understood as a gloss on the meaning of [5 U.S.C.] § 702 [the APA]." *Id.* at 389 n. 16, 107 S.Ct. 750. This section of the APA is "a broad grant of standing, intended to 'enlarge... the class of people who may protest administrative action.' " *City of Milwaukee v. Block,* 823 F.2d 1158 (7th Cir.1987)

Since that time, no other appellate courts have addressed the issue of reviewability of procurement decisions as closely. However, other courts have interpreted the Act as evidencing congressional intent to free the Postal Service "from interference with its efforts to remedy the management and efficiency problems" (*National Easter Seal Soc'y v. United States Postal Serv.,* 656 F.2d 754, 767 (D.C.Cir.1981)) and therefore to preclude review (*Concept Automation, Inc. v. United States Postal Serv.,* 887 F.Supp. 6 (D.D.C. 1995)).

(citing *Data Processing,* 397 U.S. at 154, 90 S.Ct. 827). The implication is that the test could be more restrictive where the "generous review provisions" of the APA do not apply. *Clarke* at 389 n. 16, 107 S.Ct. 750.

The Seventh Circuit has acknowledged the effect of the *Clarke* decision on its standing analysis: "the interpretation of the zone of interest test that we previously employed was too restrictive." *City of Milwaukee,* 823 F.2d at 1165. Although the instant case is not brought under the APA, the Seventh Circuit in *City of Milwaukee* explicitly acknowledged that its prior analysis in *Peoples Gas,* similarly a non-APA case, was premised on a misreading of the holding in *Association of Data Processing.* This acknowledgment strongly suggests that the Seventh Circuit would apply the broad grant of standing found in *Association of Data Processing* and *Clarke* to non-APA cases.

▆▆▆▆ Therefore, the applicable standing test requires interpretation of Congressional intent, and *Clarke* requires a court "to look at all available evidence in order to determine, in each case, whether it may 'reasonably be assumed that Congress intended to permit the suit.'" *City of Milwaukee,* 823 F.2d at 1166. A party who meets the requirements of Article III is presumed to have standing. The presumption is rebutted if the party fails the zone of interest test. This means that the interest asserted by the plaintiff must be plausibly related "to at least one of the concerns that actually motivated Congress to take legislative action." *Id.* Finally, if the party satisfies the zone of interest test, standing may still be denied "if there is convincing evidence that allowing the action would thwart congressional intent." *Id.*

Neither the Postal Service Reorganization Act nor its Procurement Manual specifically mentions prospective suppliers or even bidders. Yet a focus on the plaintiff as opposed to the interest it is asserting is improper. *Id.* at 1165. The legislative history clearly evidences the reform-minded purpose of the Act which was to "[e]liminate serious handi-

caps that are now imposed on the postal service ... that are outmoded, unnecessary, and inconsistent with modern management in business practices that must be available if the American public is to enjoy efficient and economical postal service." *Peoples Gas* at 1196 (citing 1970 U.S.Code Cong. & Ad. News, p. 3650). The express intent of the Act and its regulations is that the Postal Service operate in an efficient, businesslike and competitive manner for the benefit of potential customers.

Courts have found standing under other statutory schemes for prospective bidders challenging the procurement decisions of a federal entity. *See Chem Service v. Environmental Monitoring Systems,* 12 F.3d 1256 (3rd Cir.1993); *Rapides Regional Medical Center v. Secretary, Dept. of Veterans Affairs,* 974 F.2d 565 (5th Cir.1992). Generally, federal entities are obligated to comply with the Federal Property and Administrative Services Act, 41 U.S.C. § 251 *et seq.,* and the Competition in Contracting Act, 31 U.S.C. § 3551 *et seq.,* when making purchases and contracts unless these statutes are made inapplicable by other law. These statutes facilitate the procurement of property and services and promote full and open competition. Significantly, with a few specifically delineated exceptions, federal law dealing with public or Federal contracts does not apply to the exercise of powers by the Postal Service. 39 U.S.C. § 410.

However, AT & T has cited several provisions of the Procurement Manual advocating the use of competitive procurement procedures when feasible or appropriate. §§ 1.7.2.a, 4.4.1.b and 4.4.1.c.[2] These and other provisions of Chapters 1 and 4 detail the competitive purchasing obligations of the Postal Service. The provisions are generally consistent with the long-standing preference for competition in the laws governing public contracts. *Aero Corp. v. Department of the Navy,* 540 F.Supp. 180, 203 (D.D.C.1982) (citing *Paul v. United States,* 371 U.S. 245, 253, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963)). Public policy further suggests that the competitive

---

**2.** The Postal Service has not argued that any of the exceptions to competitive purchasing apply in this case.

interest of a prospective supplier who has not been given an opportunity to compete is an interest in competition *vel non,* and not just economic self interest. *See Aero* at 203 (finding standing for a prospective bidder who was denied the opportunity to compete for procurement contracts and therefore brought a claim for violation of the Armed Services Procurement Act and related regulations). In the instant case, the court can consider the rules promulgated by the Postal Service as law to apply. Although Congress' clear intent was for the Postal Service to be generally exempted from public contract law and instead treated like a private business, these regulations reinstate binding competitive obligations on the Postal Service. Permitting a lawsuit by a potential supplier does not thwart Congress' intent.

AT & T has also cited Section 6 of the Procurement Manual which outlines the protest procedures for "any interested party concerning the terms of a solicitation, the award or proposed award of a contract, or any other action relating to the solicitation or award of a contract." §§ 4.6.1–4.6.7p. These protest provisions do not specifically mention suppliers or explicitly create a cause of action for them. However, the language of the provisions is broad enough to allow a protest by prospective suppliers. It is clear from the record in *Peoples Gas* that some process did exist prior to June 1988 similarly providing for the filing and resolution of bid protests by the office of the General Counsel. However, the current specific provisions were enacted in June 1988 and, at a minimum, support the conclusion that the competitive interest asserted by a prospective supplier is plausibly related to a congressional concern.

Therefore, for the reasons state above, the motion to dismiss is denied.

### ORDER

On July 24, 1996, AT & T filed an action for declaratory and injunctive relief relating to a series of sole-source contracts entered into by the defendant, the United States Postal Service, and Public Communication Services ("PCS") for the management of public pay telephones in various locations across the U.S. On August 29, 1996, the Postal Service filed a motion to dismiss on the grounds that (1) AT & T lacks standing to challenge alleged violations of the Postal Service's procurement regulations; (2) the Postal Service's procurement decisions are not judicially reviewable; and (3) AT & T has not alleged a proper basis for a breach of contract claim.

On March 20, 1997, this court issued an order denying the motion to dismiss. The Postal Service has filed a motion to reconsider only the court's decision that AT & T had standing to contest the Postal Service's actions and cited a Supreme Court case decided one day prior to this court's ruling, *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). This court has analyzed *Bennett* and denies the motion to reconsider. The Supreme Court in *Bennett* reiterated the same conclusion it had reached in prior cases, that "the breadth of the zone of interests varies according to the provisions of law at issue, so that what comes within the zone of interests of a statute for purposes of obtaining judicial review of administrative action under the " 'generous review provisions' " of the APA may not do so for other purposes." *Bennett* at 1161. This court does not believe that the decision in *Bennett* provides any basis for reconsidering its prior decision. Accordingly, the motion to reconsider is denied.