**CONCEPT AUTOMATION,
INC., Plaintiff,**

v.

**UNITED STATES POSTAL
SERVICE, Defendant.**

**Civ. A. No. 94–2374 (TPJ).**

United States District Court,
District of Columbia.

May 23, 1995.

---

Jed Lloyd Babbin, Washington, DC, for plaintiff.

Richard J. Conway, Dickstein, Shapiro & Morin and James Martin McHale, Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, for movants.

Barbara J. Valliere, U.S. Attorney's Office, Washington, DC, for defendants.

David Paul Hendel and Michael A. Gatje, Wickwire Gavin, P.C., Vienna, VA, for inter-venor-defendant.

*MEMORANDUM AND ORDER*

JACKSON, District Judge.

This "disappointed bidder" case presents a threshold issue which, if not altogether of first impression, has nevertheless escaped a definitive resolution by any other court and must be addressed here before reaching any of the merits questions. The issue is, simply put, whether Congress intended that procurement decisions of the United States Postal Service ("USPS" or "Postal Service") to award contracts for goods and services it proposes to buy are, as are those of most conventional government agencies, subject to judicial review.

I.

Plaintiff Concept Automation, Inc. ("CAI") made a bid on a request for proposals ("RFP") by the Postal Service in February,

1994, to upgrade USPS' computer system. In October, 1994, the Postal Service awarded the contract to CAI's competitor, Digital Equipment Corporation ("Digital"), with performance scheduled to commence in April, 1995. In November, 1994, CAI filed its complaint in this Court, naming only the Postal Service as a defendant,[1] praying for preliminary and permanent injunctions to halt performance of the contract.[2] According to CAI, the case "arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, 39 U.S.C. § 410, the Postal Service's own Procurement Manual, 39 C.F.R. Part 601, and plaintiff's right under federal common law to have its proposal considered in accordance with law and regulation and the terms of the solicitation." (Complaint ¶ 4).

■ Being uncertain on the basis of the foregoing allegation as to the source of its power to entertain the case at all,[3] or at least to award the relief sought against the Postal Service, the Court invited a motion to dismiss the complaint by the Postal Service. USPS responded with a motion to dismiss on Fed. R.Civ.P. 12(b)(1) and 12(b)(6) grounds.

From proceedings on that motion, this much is clear: United States district courts have original jurisdiction of civil actions "under any Act of Congress relating to the Postal Service," 28 U.S.C. § 1339, and (with an inapplicable exception) of "all actions brought by or against the Postal Service." 39 U.S.C. § 409(a). *See Licata v. United States Postal Serv.*, 33 F.3d 259, 261 (3d Cir.1994) and cases cited therein.

■ The existence of subject matter jurisdiction, however, does not end the inquiry. The Court must further determine whether CAI has stated a claim upon which relief can

be granted, thereby surviving the Postal Service's motion to dismiss under Fed.R.Civ.P. 12(b)(6). And although the existence of a jurisdiction-conferring statute imports a presumption in favor of the availability of judicial review of an action taken by an administrative agency, *National Ass'n of Postal Supervisors v. United States Postal Serv.*, 602 F.2d 420, 429 (D.C.Cir.1979), the presumption can be overcome by evidence of a legislative intent to foreclose judicial intervention, or a finding that the issues involved are unsuitable for judicial determination owing to the character of the discretion delegated to the administrative agency. *Id.* at 429. In other words, any presumption in favor of judicial review dissipates if a contrary purpose is "fairly discernible in the statutory scheme." *Association of Data Processing Serv. Org. v. Camp*, 397 U.S. 150, 157, 90 S.Ct. 827, 832, 25 L.Ed.2d 184 (1970).

## II.

■ Congress enacted the Postal Reorganization Act of 1970, 39 U.S.C. §§ 101–5605 (1982 & Supp.1986), with the intent that "the Postal Service be run more like a business than its predecessor, and accordingly, launched the Postal Service into the commercial world." *United States v. Electronic Data Sys. Fed. Corp.*, 857 F.2d 1444, 1446 (Fed.Cir.1988), (citing *Loeffler v. Frank*, 486 U.S. 549, 555–56, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988)); *Carlin v. McKean*, 823 F.2d 620, 621 (D.C.Cir.1987) ("In 1970, [ ] Congress reorganized the Postal Service so that it would operate more along the lines of a private company."). To that end, Congress expressly exempted the Postal Service from the constraints of certain statutes affecting other federal agencies in their operations,

---

1. Digital has since intervened as a defendant, and two prospective intervenors, also unsuccessful bidders, have appeared as *amicus curiae*.

2. The complaint, drawn in three counts, alleges that USPS ignored the provisions of both its RFP and its own Procurement Manual in accepting a nonconforming proposal from Digital, in failing to consider a split award as offering the best value, and in misscoring CAI's proposal.

3. The Declaratory Judgment Act is not a jurisdictional, but only a remedial statute. *See Skelly Oil*

*Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950). As shown hereafter, 39 U.S.C. § 410 only purports to subtract from jurisdiction otherwise obtained and confers none. The USPS Procurement Manual cannot *ex proprio vigore* raise a right to relief absent statutory authority. And any "federal common law" of standing to obtain judicial review of agency action has been subsumed (at least in the context of procurement decisions) by the Administrative Procedure Act and the *Scanwell* doctrine. *See Scanwell Lab., Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970).

including all "[f]ederal laws dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds," 39 U.S.C. § 410(a). Thus, from its inception, the USPS was relieved of any obligation to comply in its procurement decisions with such statutes as the Competition in Contracting Act, 31 U.S.C. §§ 3551–3556.[4]

At virtually the same time Congress was in the process of enacting the Postal Reorganization Act, the D.C.Circuit was deciding the seminal case of *Scanwell Lab., Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970).[5] *Scanwell* represented the first, and is still the leading case extending the right to judicial review under the Administrative Procedure Act ("APA") to those aggrieved by the *procurement* decisions, as well as the substantive regulatory activities, of government agencies. Although any connection between the *Scanwell* decision itself and particular provisions of the Postal Reorganization Act is conjectural—it is not mentioned by name in the legislative history—but the *Scanwell* doctrine might well have been anticipated by Congress, because, but for yet another provision of 39 U.S.C. § 410(a) presciently added by Congress, the APA would have subjected the USPS' decision-making processes generally to judicial review. The clause immediately following that exempting the Postal Service from procurement laws generally in 39 U.S.C. § 410(a) similarly exempts it from the "provisions of chapters 5 *and 7* of title 5" [of the U.S.Code], where *the pertinent sections of the APA are found,* at 5 U.S.C. §§ 702–706 (emphasis added).

■ The issue presented here, therefore, is whether Congress sufficiently manifested its intent in the Postal Reorganization Act that Postal Service procurements—as distinguished from most other government agency contracting decisions—not be subjected to judicial oversight.

The leading case supporting reviewability of Postal Service procurements appears to be *Peoples Gas, Light & Coke Co. v. United States Postal Serv.,* 658 F.2d 1182 (7th Cir. 1981), in which the Seventh Circuit held that proceedings on a Postal Service solicitation for bids for a new electrically powered heating plant were judicially reviewable, although the court went on to hold that the plaintiff in that case, the vendor of an alternative energy source, was still without "standing" to challenge the Postal Service's predilection for electricity. The "substantive basis" for jurisdiction, the *Peoples Gas* court said, is to be found in those provisions of the Postal Reorganization Act enumerating the general powers of the Postal Service, 39 U.S.C. § 401(2) and (3), empowering USPS to "adopt rules and regulations" and to "enter into and perform contracts." It then went on to find a provision of a companion publication to the Postal Contracting Manual (which it deemed to be a "regulation") requiring USPS' contracts to be "cost effective" to supply the "law to apply in this review action." *Peoples Gas,* 658 F.2d at 1189–90.

No other appellate Postal Service *procurement* case has approached the issue as closely or in as much depth. In *Morgan Assocs. v. United States Postal Serv.,* 511 F.2d 1223 (2d Cir.1975), a disputed USPS construction contract award was reviewed on the merits (and approved) without discussion of the court's authority to do so. The Court of Claims, in *Mack Trucks, Inc. v. United States,* 6 Cl.Ct. 68 (1984), ordered the USPS to entertain a bid to sell it trucks, finding the authority to do so in an "implied obligation [of the government] to fairly and honestly consider all responsive bids submitted." *Id.* at 70. Other cases cited have all involved actions by plaintiffs who had claims other than as disappointed bidders. *E.g., Licata v. United States Postal Serv.,* 33 F.3d 259 (3d

---

**4.** *See also* 116 Cong.Rec. 21,709 (1970) (remarks of Sen. McGee) ("Except as specified in the bill, all laws relating to public works, contracts, employment, appropriations, budgeting, and any other laws governing agency operations are made inapplicable to the Post Office.").

**5.** *Scanwell* was decided on February 13, 1970, and rehearing denied on May 7, 1970. The

Postal Reorganization Act passed the House of Representatives on August 6, 1970, *see* 116 Cong. Rec. 27,609–10 (1970) (having passed the Senate three days earlier, *see* 116 Cong.Rec. 26,962 (1970)) and was signed by the President on August 12, 1970, effective immediately. 6 Weekly Comp.Pres.Doc. 1058–59 (Aug. 12, 1970).

Cir.1994) (postal worker could sue for cash award from USPS employer in U.S. district court notwithstanding the Tucker Act); *American Postal Workers Union v. United States Postal Serv.,* 830 F.2d 294 (D.C.Cir. 1987) (U.S. district court could order reinstatement of postal worker unconstitutionally discharged).

On the other hand, at least one other case against the Postal Service from the D.C.Circuit, albeit not a disappointed bidder case, clearly recognized the change Congress had wrought by the Postal Reorganization Act in the nature of the organization to which it was entrusting delivery of the mail, and forcefully suggested that, in its purely business decisions, the Postal Service was to be left largely alone. In *National Easter Seal Soc'y for Crippled Children and Adults v. United States Postal Serv.,* 656 F.2d 754 (D.C.Cir. 1981), the Court of Appeals held that 39 U.S.C. § 410(a) exempted the Postal Service from the notice-and-comment requirements for rulemaking under the APA, observing in doing so that the exempting language embraced the entirety of chapters 5 and 7 of Title 5, "not only from those provisions that deal with federal contracts, property, etc." *Id.* at 766. Moreover, it pointed out that Congress did expressly subject decisions of the Postal Service to judicial review in one respect, specifically, decisions of its Board of Governors on rates proposed by the Postal Rate Commission, *see* 39 U.S.C. § 3628, thus implying (*expressio unius est exclusio alterius* ) that in other respects, "the Postal Service was to be free from interference with its efforts to remedy the management and efficiency problems by which Congress was troubled." *Id.* at 767.[6]

If Congress was intent upon relieving the newly constituted Postal Service of the constraints of federal contracting laws, and simultaneously exempting it altogether from the requirements of the APA, including the judicial review provisions by which virtually all other government procurements have been challenged since *Scanwell,* it seems unlikely indeed that Congress intended to leave USPS vulnerable to the "common law presumption of judicial review" as found by the Seventh Circuit in *Peoples Gas.* 658 F.2d at 1191. Nor does it comport with the legislative purpose of enabling the Postal Service to function like a private business to attribute the existence of a private right of action in favor of its would-be suppliers, and enforceable effect to its Procurement Manual and the terms of its RFP, to compel the Postal Service to purchase a commodity it decides on reflection it does not want to buy.

Were it a truly private entity, USPS could reject one aspiring contractor's offer in favor of another, or none at all, for any or no reason, and could do so in open disregard of its own self-imposed procurement rules, without incurring liability to its disappointed bidders. Such is the status and the result this Court concludes Congress intended for the Postal Service in the circumstances presented here. Undoubtedly the Postal Service would be liable for a *breach* of its contracts once made. But how it goes about deciding what contracts it will make is no one's business but its own.

For the foregoing reasons, therefore, it is this 23rd day of May, 1995,

ORDERED, that the motion of the Postal Service to dismiss the action for lack of subject matter jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(1), is denied; and it is

FURTHER ORDERED, that the motion of the Postal Service to dismiss the action for plaintiff's failure to state a claim upon which relief can be granted, pursuant to Fed. R.Civ.P. 12(b)(6), is granted, and the complaint is dismissed with prejudice; and it is

FURTHER ORDERED, that all other pending motions herein are denied as moot.

---

6. *See also National Ass'n of Postal Supervisors v.* *United States Postal Serv.,* 602 F.2d at 431–32.