**CONCEPT AUTOMATION, INC., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 96–66C, 96–106C, 96–140C.

United States Court of Federal Claims.

July 23, 1998.

Jed Babbin, Washington, DC, for plaintiff Concept Automation; Matt Koehl, Washington, DC, for plaintiff Zenith Data Corporation; Richard Conway, Washington, DC, for plaintiff Falcon Microsystems.

Elizabeth W. Newsom, Washington, DC, with whom was Lydia K. Griggsby, Trial Attorney, Joseph A. Kijewski, Assistant Director, David M. Cohen, Director, Commercial Litigation Branch, and Frank W. Hunger, Assistant Attorney General, Civil Division, United States Department of Justice, for defendant. Michael Vandamm, General Counsel, United States Postal Service, of counsel.

## OPINION

SMITH, Chief Judge.

Plaintiffs Concept Automation, Zenith Data Corporation. and Falcon Microsystems filed actions to recover bid and proposal costs and attorneys' fees and costs incurred in prosecuting administrative appeals and a U.S. district court challenge to the decision of the U.S. Postal Service to award a computer contract to a competitor, Digital Equipment Corporation. In many respects, the legal issues are similar to those in *Crux Computer v. United States,* 24 Cl.Ct. 223 (1991) and *Finley v. United States,* 31 Fed. Cl. 704 (1994), *appeal dismissed,* 50 F.3d 21 (Fed.Cir.1995), but neither precedent conclusively resolves the issue. The government has moved to dismiss plaintiffs' claim for attorney fees in connection with bid protest costs and for judgment on the administrative record. Defendant subsequently filed a separate Motion for Judgment on the Administrative Record to include Zenith Data Corporation and Falcon Microsystems, who had since joined in the action. Plaintiffs then filed a Motion for Partial Summary Judgment with Respect to Entitlement. Defendant's Partial Motion to Dismiss, defendant's Motion for Judgment on the Administrative Record, and plaintiffs' Motion for Partial Summary Judgment were all fully and voluminously briefed. Oral argument was held on all pending motions. For the following reasons, defendant's Partial Motion to Dismiss and Motion for Judgment on the Administrative Record are denied, and plaintiffs' Motion for Summary Judgment is granted as to liability.

## FACTS

On February 3, 1994, the U.S. Postal Service (USPS) released a Request for Proposals (RFP), No. 102590–94–A–008, for a procurement contract known as "Acquisition of Desktop Extended Processing Technology" (ADEPT). Twenty offerors bid to provide the USPS with hardware, software, computers, and technical support for all USPS computers throughout the nation. The ADEPT solicitation provided that the award would be made to the responsible offeror whose proposal offered the best value to the USPS. The guidelines for the USPS's evaluation of proposals are set forth in a Procurement Manual (the version in effect as of June 30, 1993). Each offeror (bidder) submitted a technical proposal and a price proposal; the technical proposal was evaluated by a "technical evaluation team" (TET) at USPS. The TET's threshold determination was whether "the proposal minimally meet[s] all of the mandatory requirements." Def. Part. Mot. to Dismiss at 5. Those that failed this initial test were excluded from further evaluation; those that were minimally compliant were evaluated according to a relative weight formula, which assigned points for factors such as "Distribution and Supply Network" and "Organization Quality." *Id.* The total possible score was 1500 points. The ADEPT solicitation weighted the technical and cost components of the proposal equally, and provided further that "the award may not necessarily be made to that offeror submitting the lowest price." *Id.* at 6.

The ADEPT solicitation required that the desktop configurations submitted have software upgradeable basic input-output system (BIOS), but according to defendant, "the original solicitation did not specifically require that a particular method be utilized by the offerors." *Id.* at 6. On March 4, 1994, the USPS issued Amendment 4 to the solicitation, which responded to several questions

about the procurement raised by the bidders. Among these was a response to Question 58, concerning the software upgradeable requirement for the BIOS. The question asked, "May the software upgradeable requirement be deleted from the BIOS for the portable computers? Does 'software upgradeable,' in the desktop and server BIOS requirements, mean a Flash BIOS?" The response was: "This requirement has been deleted from the portables, and, yes, a Flash BIOS is meant." *Id.* at 7; Pl. Prop. Find. of Uncontrov. Fact at 2 (hereinafter Pl. Facts). However, "the contracting officer and TET did not interpret question and response 58 to revise the mandatory solicitation requirements to specifically require Flash BIOS." Def. Mot. to Dismiss at 7 (citing William Jones, Senior Counsel, USPS, Report on Zenith & Falcon Protests, June 22, 1995, Def. Appx. at 254–55) [hereinafter "General Counsel Decision"]. The validity of the USPS's interpretation of Question 58 and its Response is the crux of the dispute in this case.

On March 24, 1994, Concept Automation Inc. (Concept) submitted its proposal to the USPS. On May 2, 1994, the USPS informed Concept that its offer was not in the competitive range, and "debriefed" Concept on May 10, 1994, identifying "three deficiencies, 16 weakness[es] and other serious defects in [Concept's] proposal," all of which contributed to a low technical score. Def. Mot. to Dismiss at 7. Concept filed a protest on May 16, 1994; several other disappointed bidders filed similar protests. On August 2, 1994, the contracting officer responsible for the ADEPT solicitation determined that "it would be economical and expedient to allow all proposals into the competitive range," and allowed the offerors to submit revised proposals. *Id.* at 8. On October 13, 1994, the USPS awarded a single contract to Digital Equipment Corporation (DEC) under the ADEPT solicitation. Pl. Facts at 3. "In its technical proposal for the solicitation, DEC offered an approach to software upgradeable BIOS other than Flash BIOS"; Concept offered Flash BIOS. The USPS treated both proposals as technically equal for purposes of the ADEPT solicitation. Def. Mot. to Dismiss at 10. At another debriefing on October 26, 1994, the USPS again disclosed to Concept "numerous weaknesses in its proposal." *Id.*

Concept's disappointed bidder suit against the USPS was dismissed by the U.S. District Court for the District of Columbia, *Concept Automation Inc. v. United States Postal Service,* 887 F.Supp. 6 (D.D.C.1995); Zenith Data Corporation's (Zenith) and Falcon Microsystems' (Falcon) initial protests to the USPS were rejected. On June 7, 1995, Zenith and Falcon refiled their protests with the General Counsel of the USPS, and Concept intervened in support. Pl. Facts at 4. On October 12, 1995, "the Postal Service's contracting officer exercised the first option year of DEC's contract, notwithstanding plaintiffs' protests, which were then still pending before the General Counsel." Pl. Mem. In Supp. of Mot. for Summ. Judg. at 8.

"On November 22, 1995, the General Counsel sustained the offerors' protest in part. In his decision, the General Counsel determined that: (a) Amendment 4 modified the solicitation to specifically require Flash BIOS, and that based upon this modification, DEC should have been excluded from the competitive range; (b) if DEC had been excluded from the competitive range, 'no obvious winner' emerged . . .; [Zenith, Falcon, and Concept] were harmed by the erroneous inclusion of DEC among the offerors." Def. Mot. to Dismiss at 11–12. However, the General Counsel also concluded that "the protesters had not been substantially prejudiced by the contracting officer's harmless error [in including DEC's deficient proposal] and, therefore, the award to DEC should not be overturned." *Id.* at 12. Specifically, the General Counsel Decision stated:

The standard [substantial prejudice] cited by the protesters and their supporters among the interested parties is the appropriate one. Under that standard, we believe that the failure of the contracting officer (and her technical evaluators) to understand the effect of [Amendment 4] on the solicitation, and accordingly to evaluate the offers consistently with that effect, is serious. On the other hand . . . the prejudice to [the protesters] was slight, since the error, if timely corrected, would not have affected the result. . . .

[ ]. We conclude, however, that no relief is appropriate in the absence of substantial prejudice. . . .

General Counsel Decision at 20. Plaintiff Concept filed its complaint in this court on February 6, 1996; the case was subsequently consolidated with Zenith and Falcon. The consolidated plaintiffs claim that the USPS owes them bid and proposal costs and protest costs incurred in the administrative proceedings before the USPS and in litigation before the district court.

## DISCUSSION

### I. DEFENDANT'S MOTION TO DISMISS

■ Defendant has moved the court to dismiss plaintiffs' claim for protest costs, including attorney fees, arguing that this court does not have jurisdiction. With respect to plaintiffs' claims for bid protest costs, the court does have jurisdiction.[1] In *Crux Computer*, this court held that it did have jurisdiction to grant bid protest costs. 24 Cl.Ct. at 226. *Cf. AT & T Technologies, Inc. v. United States*, 18 Cl.Ct. 315 (1989)(holding damages for breach of Government's implied contract to consider offers fully and fairly are limited exclusively to bid and proposal costs). In arguing that this court has no jurisdiction over plaintiffs' claim for bid protest costs, defendant essentially seeks to relitigate *Crux Computer v. United States*, 24 Cl.Ct. 223 (1991) and *Finley v. United States*, 31 Fed. Cl. 704 (1994). "[Defendant] respectfully disagree[s] with the Court's determination in *Crux* and *Finley* that the Court may award bid protest costs. . . ." Def. Reply to Pl. Opp. to Mot. to Dismiss at 3–4. Defendant argues that the United States has not waived its sovereign immunity with respect to "such damages," and then states that "plaintiffs have identified no waiver of sovereign immunity with respect to its litigation fees." *Id.* at 4. Defendant does not explain why "costs expended in reliance upon" the implied contract that exists between bidders and the government to treat their bids fairly and honestly, which are recoverable under the Tucker Act, may not include the costs of a bid protest including attorney fees.[2] Defendant explains why "lost profits" are not recoverable in a bid protest action, but plaintiffs are not seeking any costs that could be described as lost profits. *Id.* at 4–5. Stating that "the award of bid protest costs is not a foregone conclusion in this Court" does not mean that defendant's motion under RCFC 12(b)(1) and RCFC 12(b)(4) should be granted. *Id.* at 6.

Where a bidder has been unfairly treated by the government agency that has solicited bids for a contract, there are at least two possible outcomes. First, the contract is wrongfully not awarded to the bidder, the bidder protests, and the contract is then awarded to the bidder. In this case, the bidder would be entitled to any costs that could qualify under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (1994)[3]; any bid proposal (or preparation)

---

1. Under this court's new jurisdiction, effective January 1997, it would appear that a plaintiff may no longer recover bid protest costs. It is still unclear, however, whether or not a plaintiff may recover those costs under the implied contract theory. *See* 28 U.S.C. § 1491(b)(1–2) (West Supp.1998).

2. *See Compubahn, Inc. v. United States*, 33 Fed. Cl. 677, 681 (1995) ("Damages to a disappointed bidder may be based on his reliance interest, not his expectation interest.").

3. The statutory provision reads as follows:

Except as otherwise specifically provided by statute, a court shall award a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Court of Federal Claims can award attorneys' fees and expenses under the EAJA. *Essex Electro Eng'rs v. United States*, 757 F.2d 247 (Fed.Cir.1985). A disappointed bidder to whom the court awarded a contract that the government had wrongfully denied would certainly have "prevailed" within the meaning of the EAJA. If, as could be presumed, the government's position was not substantially justified, EAJA costs would be awarded. *See Swedish Hosp. Corp. v. Shalala*, 845 F.Supp. 894 (D.D.C.1993) (for purposes of EAJA award of attorneys' fees, burden of proof shifts to govern-

costs would be recovered in the contract price. The ill-treated bidder would thus have received the benefit of his bargain, the award of the contract itself, plus costs that returned him to the position he would have been in had the government not acted improperly. In the second possible outcome, the contract is wrongfully not awarded to the bidder, and is awarded to another bidder, and the wronged bidder protests. Since the contract has already been awarded, the bidder seeks to recover his costs alone, and does not seek the contract itself.[4] In the latter outcome, which is the circumstance here, it is undeniable that the disgruntled bidder would be entitled to bid proposal (preparation) costs. *AT & T Technologies Inc. v. United States*, 18 Cl.Ct. 315, 320 (1989) ("the very injury for which the court compensates a contractor is the contractor's inability to recover its B & P costs as it rightfully would have, had it not been wrongfully denied the contract"). The bidder in the second case would thus receive one of the alternatives to the benefit of his bargain, either restitutionary or reliance damages. The question is whether the bid protest costs are justly included as such damages along with bid proposal costs. Put another way, do bid protest costs (including attorneys' fees) constitute foreseeable damages arising from the government's breach of contract?

Defendant argues that "[t]his Court expressly rejected the plaintiffs attempt to seek review of the district court's decision not to award litigation costs and held that the Court 'does not possess jurisdiction for such review.'" Def. Reply to Pl. Opp. to Mot. to Dismiss at 7 (citing *Finley*, 31 Fed.Cl. at 707). The court actually merely stated that it had no jurisdiction to review "the district court's determination." 31 Fed.Cl. at 707 (citing *Lark v. United States*, 17 Cl.Ct. 567, 571 (1989)) ("There is little dispute that this

court's jurisdiction does not extend to the review of *substantive* actions taken by other federal courts.") (emphasis added). This citation of a basic principle of this court's jurisprudence cannot be turned into a refutation of a particular interpretation of government contract law.

Plaintiffs argue that *Finley* supports their claim to attorneys' fees, to the degree that attorneys' fees represent "[e]xpenses incurred to apprise the agency of the facts, to persuade the agency on the proper interpretation of the solicitation, and to pursue a protest...." *Finley*, 31 Fed.Cl. at 707 (citing *T & H Company*, 54 Com. Gen. 1021, 1027–28 (1975)). *Finley* stated that all of these expenses were protest costs. *Id.* Alternatively, plaintiffs here argue that the Equal Access to Justice Act supports an award of attorneys' fees. On its face, this EAJA-based argument is without merit. In order to recover costs incurred in this court under EAJA, plaintiffs would have to first prevail on their motion for summary judgment, and then make a separate EAJA application for fees. EAJA itself provides plaintiffs with no means through which to recoup costs incurred at the administrative or district court level.[5] The court, however, finds plaintiffs' first theory persuasive.

In *AT & T Technologies Inc. v. United States*, 18 Cl.Ct. 315 (1989), however, this court stated expressly that "[legal] fees, incurred well after contract award, are not [bid and proposal] costs but are rather protest costs. [ ]. Plaintiff may recover only proposal preparation costs in this action." 18 Cl.Ct. at 325–36. *See also PH Group, Ltd. v. Birch*, 985 F.2d 649, 651 (1st Cir.1993) ("Courts, both in Massachusetts and elsewhere, have uniformly required that a party succeed on a significant issue in order to be entitled to attorneys' fees.") (citations omitted).[6] As a

---

ment to show that its position is substantially justified once other party has prevailed).

4. Under this court's new jurisdiction in 28 U.S.C. § 1491(b)(1–2), a plaintiff may seek injunctive relief after a contract is awarded in this court. This relief may be given under the statutory provision, and does not rely on the theory that the government has breached an implied-in-fact contract to treat their bids fairly and honestly.

5. But see infra part III, where it does provide a useful analogy.

6. *Birch* was decided in the context of a license agreement between Birch's company, Cognetics, and PH (a software consulting business). PH sought damages for, among other causes of action, breach of an implied covenant of good faith and fair dealing. When a jury in U.S. district court ruled against PH on all counts except the

general matter, "attorneys' fees are ordinarily not recoverable in the absence of a statute or contract provision stating otherwise. Any other result would abrogate the long-held American Rule, through which each party shoulders the cost of litigating its own case." *United States v. Fidelity & Deposit Co. of Maryland*, 986 F.2d 1110, 1120 (7th Cir.1993) (citing *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 130, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)). However, there are exceptions to the American Rule, notably, where a party has acted in bad faith, fraud has been practiced on the court, or a litigant has exhibited abusive and egregious behavior. *Fidelity & Deposit Co. of Maryland*, 986 F.2d at 1120. The court must decide whether an award of attorneys' fees (which likely would constitute the bulk of the claimed bid protest costs) is a departure from the American Rule under the bid protest scheme established by federal law.

The purpose of the bid protest scheme is twofold. First, it is designed to benefit the taxpayers, and hence the government, by making government procurement both more fair and more efficient. This is so in various ways. If contractors have an honest and fair system, they will be more willing to deal with the government at a lower price. Also, if the government acts honestly and rationally, the government and the taxpayers will get the best deal for their money and needs. Finally, a fair and efficient system will maximize public accountability and allow for more rational planning for future needs. The other basic purpose is to benefit those who do business with the government. This is partially based on basic fairness or justice. People, whether citizens, foreigners, or even contractors, should be treated fairly. It is also based on sound business practice. It is critical to deal with vendors, suppliers, or cus-

tomers properly. Otherwise, you may encourage them to treat you badly.

As already stated, this court has jurisdiction to award bid protest costs. *See Finley*, 31 Fed.Cl. at 707–08 (finding insufficient evidence of bad faith or arbitrary and capricious behavior by the government, but rejecting the government's position that bid protest costs may not be recovered under any circumstances); *Crux Computer*, 24 Cl.Ct. at 226 (declining to follow *AT & T Technologies* suggestion that bid protest costs are not recoverable and finding that the court has jurisdiction to award both bid protest and bid preparation costs). In both *Finley* and *Crux Computer*, the court found that the government's decision-making had not been proven arbitrary and capricious and, thus, plaintiffs could not recover bid protest costs. If plaintiffs here can demonstrate arbitrary and capricious conduct by the government, they can recover bid protest costs. In addition, it must be decided whether the General Counsel's Decision should be construed to mean that plaintiffs "prevailed" at the agency level and whether the USPS's award of the AD-EPT contract to DEC was unreasonable.

For the foregoing reasons, defendant's Motion to Dismiss must be denied. The court must now decide the parties' cross-motions for summary judgment, and in doing so determine whether the government breached its implied-in-fact contract and what is the proper scope of plaintiffs' damages.

## II. CROSS–MOTIONS FOR SUMMARY JUDGMENT

▬ The next question is whether the government breached its implied-in-fact contract with plaintiffs to treat their bids fairly and honestly. *See Keco Indus. Inc. v. Unit-*

---

breach of the implied covenant, PH claimed attorneys' fees under a provision in the parties' original agreement ("the prevailing party shall be entitled to all costs of the proceedings incurred in enforcing this Agreement"), asserting that it had "prevailed." The District Court and First Circuit rejected PH's contention on this point, reasoning that *unless some material alteration of the legal relationship between the parties occurs so that one party becomes entitled to enforce a judgment, no mere favorable statement of law bestows "prevailing party" status on a litigant.* 985 F.2d

at 652 (citing *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 573–74, 121 L.Ed.2d 494 (1992) (emphasis added)). Plaintiffs' claim for attorneys' fees could be sustained under this standard, despite the lack of any provision in the ADEPT Solicitation similar to the attorneys' fees clause in the PH–Cognetics agreement. *Cf. Finley*, 31 Fed.Cl. at 707; *AT & T Technologies*, 18 Cl.Ct. at 325–26. In plaintiffs' case, the breach of the implied contract cause of action constitutes the entire case; if the government breached, it is liable and plaintiffs can enforce a judgment.

*ed States,* 203 Ct.Cl. 566, 492 F.2d 1200 (1974) (*Keco II* ); *Keco Indus. Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233 (1970) (*Keco I* ). In order to establish a breach of the implied condition to deal fairly and honestly with bidders, bidders must show that the government actions were arbitrary and capricious. *Finley v. United States,* 31 Fed. Cl. 704, 706 (1994). *Keco II* set out a four factor test to determine whether the government's implied duties were breached in disappointed bidder actions: (1) presence or absence of bad faith by the government; (2) whether a reasonable basis exists for the government's decision; (3) the amount of discretion afforded the government official, and (4) the violation of a statute or regulation.[7] *Keco II,* 492 F.2d at 1204. If USPS's acknowledgments, in the General Counsel Decision of November 22, 1995, that the contracting officer's decision to award the contract to DEC was unauthorized, unreasonable, a breach of established procurement principle, and harmed plaintiffs by depriving them of a reasonable likelihood of winning the contract together constitute admission of the *Keco II* elements,[8] and/or arbitrary and capricious action, then USPS is in breach. Plaintiffs argue that, given such a breach, they may recover bid protest costs as damages.

■ The unchallenged facts of the case mandate summary judgment for plaintiffs. First, Amendment 4 to the Solicitation established that only systems with "Flash BIOS" would satisfy the software upgrade requirement. Second, Amendment 12 established that "[a]ny offerors' proposal not minimally

meeting a mandatory requirement will not be evaluated further. Such proposals will be considered unacceptable." Pl. Reply to Def. Resp. to Pl. Mot. for Summ. Judg. at 1–2. Third, DEC's proposal, according to the General Counsel's decision, did not meet the minimum requirements, i.e., did not offer "Flash BIOS." Fourth, the USPS awarded DEC the contract anyway. Fifth, "if DEC had been eliminated from the competition, one or more of the Plaintiffs had a reasonable likelihood of being selected for contract award...." *Id.* at 2.

Defendant proffered its own characterization of the facts. The government stated that:

> If the Court were to find that the General Counsel's decision was unreasonable, then there is a genuine issue of material fact that precludes the Court from granting summary judgment for either party: whether plaintiffs can establish that they could have offered products that would have overcome the superiority of DEC's proposal sufficient to show that they would have been reasonably likely [sic] of receiving the contract award.

Def. Reply to Pl. Resp. to Def. Mot. for Judg. on Admin. Record at 14 n. 4. Defendant thus focused on the statements in the General Counsel's decision to the effect that, regardless of the disputed "Flash BIOS" requirement, and even if the contracting officer had amended the solicitation (a point that defendants did not concede), plaintiffs still did not meet the technical standards and price of DEC's offer. *See* General Counsel Decision at 17–18. In other words, defen-

---

7. Plaintiffs do allege that defendant violated numerous provisions of the USPS Procurement Manual in awarding the contract to DEC. Pl. Reply to Def. Resp. in Opp. to Pl. Mot. for Summ. Judg. at 10 (USPS failed to evaluate offers in accordance with factors specified in the Solicitation, select a contractor in accordance with the stated evaluation factors, and examine each proposal to determine whether it meets the solicitation's requirements). Plaintiffs dispute defendant's contention that a contracting officer is free to award to a non-compliant offeror so long as he issues a post award amendment changing the requirements to match the non-compliant proposal. On this point, the court agrees with plaintiffs: such freedom on the part of a contracting officer would violate the whole

theory of competitive bidding. *See* Transcript of Oral Argument at 87–89 [hereinafter "Tr."].

8. Not all of the *Keco II* factors must necessarily be shown in order to prove arbitrary and capricious conduct by the government. *See Data General Corp. v. Johnson,* 78 F.3d 1556, 1562–63 (Fed.Cir.1996); *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 909 (Fed.Cir.1988) (no requirement or implication in *Keco Industries* that each of the factors must be present in order to establish arbitrary and capricious action; "to the extent that the Forest Service failed to insure fair and open bidding, it was acting either outside the scope of its discretion or in violation of the statutory mandate....").

dant disputes that plaintiffs had a reasonable likelihood of receiving the award, despite the General Counsel decision's statement that "[i]n the absence of DEC from the competition, each would seem to have some reasonable likelihood of consideration for award, and thus each was harmed by the erroneous inclusion of DEC among the offerors." General Counsel Decision at 17.

Plaintiffs cite *Data General Corp. v. Johnson*, 78 F.3d 1556 (Fed.Cir.1996) for the proposition that "to establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract." 78 F.3d at 1562. The General Counsel Decision's language, according to plaintiffs, confirms the "reasonable likelihood" that plaintiffs (any one of them) might have received the contract award absent the erroneous inclusion of DEC's proposal, and thus establishes prejudice under *Data General.* In *Data General*, prejudice was not established by plaintiffs contention that GSA communicated with IBM concerning ambiguities in IBM's pricing, whereas the agency should have awarded the contract based on IBM's higher "Table B" prices. The communications themselves were alleged to be improper, and tainted the bid process. The court rejected Data General's argument, and agreed with the GSBCA's conclusion that " 'the record does not suggest that the quantifiable and non-quantifiable discriminators between the Data General and IBM BAFOs could reasonably offset the price difference so as to make the selection of IBM improper.' " *Id.* at 1563. The court also cited a GSBCA decision in which the Board found no prejudice where the protester failed to demonstrate that the inclusion of post-offer information impacted the selection decision. *Id.*

The plaintiffs' facts here are very different because the inclusion of DEC's proposal undisputedly did affect the decision. However, DEC's proposal could not have even been appropriately considered because it failed to meet the mandatory minimum standards established by Amendments 4 and 12 to the ADEPT Solicitation. As plaintiffs appropriately noted, "The point is that a serious error was made, an ineligible offeror won, and

plaintiffs' proposal preparation costs were wasted because, but for this error, they had a reasonable chance at award." Pl. Reply to Def. Resp. in Opp. to Pl. Mot. for Summ. Judg. at 8. The logic and force of this argument is hard to deny.

The court finds that, under any common sense definition of the term "reasonable likelihood," in view of the definition given that term in *Data General,* plaintiffs did have a reasonable likelihood of receiving the contract award in the absence of the USPS's (admittedly "erroneous") inclusion of DEC in the pool of potential suppliers.

The parties also disputed the viability of DEC's proposed solution to the BIOS needs of the USPS. According to plaintiffs, "the DEC solution's inability to alter the entire BIOS program produces numerous shortcomings" that rendered it unfit for the purposes of the Solicitation. Pl. Resp. to Def. Mot. for Judg. on Admin. Record at 2 (citing the affidavit of an expert witness). Defendant countered with the statements of DEC's expert, made during the proceedings before the General Counsel, that "although Flash BIOS offers some advantages, 'it has related risks'.... Assuming that the Postal Service preferred DEC's solution for software upgradeability, that preference was not unreasonable." Def. Reply to Pl. Resp. to Def. Mot. for Judg. on Admin. Record at 19. Basically, defendant argued that plaintiffs' evidence was insufficient to demonstrate that the contracting officer's award decision was unreasonable. According to defendant, while the contracting officer made an unauthorized award decision and misinterpreted the agency's needs, had she correctly assessed those needs, and not led the plaintiffs to believe Flash BIOS was necessary, then plaintiffs would not have been prejudiced.

Plaintiffs argue again persuasively that there was no way that the contracting officer's decision could have been reasonable, given the General Counsel Decision's statement that DEC's offer "should have been found unacceptable and excluded from the competition." General Counsel Decision at 17. The General Counsel Decision itself nimbly avoids the logical consequences of such a

statement, however, by equivocating: "[H]ad the contracting officer realized prior to contract award that the solicitation's requirements overstated the Postal Service's needs ... the [Plaintiffs] would have been in a position for which the contracting officer contends, trailing DEC's technically superior and lower priced offer...." *Id.* at 17–18. The reality, however, is that the contracting officer did not rewrite the misleading solicitation prior to award. This led plaintiffs to believe they were playing by the rules when in fact, the rules had been covertly changed.

Defendant's arguments concerning the need for "Flash BIOS" are ultimately unpersuasive. The court finds no ambiguity in the response to Question 58 ("Does software upgradeable in the desktop and server BIOS requirements mean a Flash BIOS"), which undisputedly was "yes." Flash BIOS was thereafter a *sine qua non* for receiving the contract award, a condition upon which plaintiffs relied in preparing their bids. It is patently unreasonable for a government agency to state a requirement on the one hand, and then treat it as malleable in awarding the contract to a bidder that did not comply with that requirement. Plaintiffs made a convincing case at oral argument: "When you look at Flash BIOS and you understand that is where you are going to go, that is a fork in the road issue. That is an important issue. Had we known that they [DEC] were not going to comply with Flash BIOS requirements but instead you could use something old and obsolete, we would all bid different requirements. [ ]. Question and Answer 58 came out and told us what to do. We complied with it. We played under those rules. Digital did not all the way through. Digital never provided Flash BIOS." Tr. at 81–82.

The contracting officer on the ADEPT solicitation, if she was mistaken concerning the USPS's needs for BIOS capability, should have given plaintiffs an opportunity to compete on the basis of the looser standards.

*See* General Counsel Decision at 16 ("Offerors which reached [the understanding that Flash BIOS was required] had no obligation to inquire further.").[9] It is undisputed that plaintiffs were given no such opportunity, and that the USPS in fact awarded the contract to DEC prior to the General Counsel Decision.

A court cannot "second-guess the procurement process." *E.W. Bliss Co. v. United States,* 33 Fed.Cl. 123, 135 (1995) (citing *Keco II,* 203 Ct.Cl. at 579, 492 F.2d at 1207), *aff'd,* 77 F.3d 445 (Fed.Cir.1996). However, the court cannot simply accept the contracting officer's decision in this case (to award the contract to DEC) as reasonable when the General Counsel Decision specifically found that it was unreasonable, though the latter denied plaintiffs relief "since the error, if timely corrected [which it was not], would not have affected the result." General Counsel Decision at 20. It is disingenuous for the USPS to have denied relief on such grounds, when there was error, it was undisputedly *not timely corrected,* and the same decision stated that the error would have affected the result. The court may review the decisions of the contracting officer and the General Counsel, focusing on the reasonableness of those determinations. *See E.W. Bliss,* 33 Fed.Cl. at 135. The court finds that the USPS's decisions were not reasonable, were arbitrary and capricious and in bad faith, and that those decisions prejudiced plaintiffs. It has jurisdiction to award bid protest costs based on the government's breach of its implied contractual obligations of fairness and honesty.

In this case, the court must decide what it did not decide in *Finley* or *Crux Computer,* that is, can plaintiffs recover bid protest costs, including attorneys' fees, where the government breached its implied-in-fact contract, acted in an arbitrary and capricious fashion, and unreasonably awarded a contract to an unqualified bidder. This central question must be resolved, because the court

---

9. *See IRT Corporation,* B–246991, 92–1 CPD ¶ 378, 1992 WL 91279, at *2 (1992) (agency must issue an amendment to the solicitation and permit all offerors to revise their offers in accordance with the relaxed specifications; "[the agency] will sustain a protest where, [ ], without issuing a written amendment, relaxes an RFP specification that may prejudice the protester, e.g., where the protester would have altered its proposal to its competitive advantage had it been given the opportunity to respond to the altered requirements.").

finds that the USPS did breach its implied-in-fact contract in a manner that entitles plaintiffs to damages from the government. Thus, the court grants plaintiffs' motions for summary judgment as to liability.

## III. DAMAGES

■ Defendant is liable to plaintiffs for breach of its contract. The precedent is quite clear that plaintiffs are entitled to their bid proposal (or preparation) costs. *See supra* part I. On the facts of this case, the court also finds that plaintiffs are entitled to bid protest costs, including attorneys' fees, the main component of those costs.

This court, in granting plaintiffs summary judgment as to liability, has determined that the government's conduct throughout this case has been both unreasonable and arbitrary and capricious. Unlike the situation in *AT & T Technologies,* where the plaintiff did not prevail at the administrative level, plaintiffs here did prevail, despite the General Counsel Decision's denial of relief. The General Counsel Decision is itself internally inconsistent. Plaintiffs cannot simultaneously be correct in claiming that serious errors occurred during the ADEPT Solicitation, without which there was a reasonable likelihood that the contract would have been awarded to one of them, and be denied relief on the grounds that they were not prejudiced by the outcome-determinative errors. The government's defenses of its actions throughout the bidding process, and the rationalizations of the General Counsel Decision, are unpersuasive. There are no substantial justifications for the positions the government has taken since it established the Flash BIOS prerequisite for the award of the ADEPT contract.

Legally, the award of bid protest costs as damages is justifiable on either foreseeability grounds, or under the long held notion that the breaching party ought not to profit from the breach at the expense of the nonbreaching party. This is especially true when bad faith is involved.

Plaintiffs' various legal challenges to the USPS's actions following their decision to award the ADEPT contract to DEC were both understandable and foreseeable. The size of the contract, the unfairness of the decision, and the lack of any other way to seek restitution are key factors showing that the protest was foreseeable when the bids were invited. Bid preparation costs are accepted as foreseeable damages arising from a breach of the government's implied contract to deal equitably; bid protest costs are necessary components of a full remedy for the same breach, and are equally foreseeable under the facts of this case. The only way that plaintiffs can be returned to the position they occupied prior to the government's wrongful conduct is by recovering their bid protest costs. Further, the public interest in the integrity of the competitive bidding process can only be vindicated by encouraging, or at least not discouraging, protests of wrongful actions.

Further, as explained above, the EAJA would provide restitutionary costs, including attorneys' fees, for a bidder who was initially wrongfully denied a contract, and was then awarded the contract after a protest action. Logically, there is no reason why plaintiffs, who were equally ill-treated in the bidding process and wrongfully denied an opportunity to compete, should be denied a similar remedy simply because the government awarded the contract to DEC prior to the General Counsel Decision. The two key elements of a successful EAJA claim are that (1) the party seeking costs has prevailed, and (2) that the government's position, either pre-litigation [10] or during litigation, was not substantially justified. *See Jones v. Lujan,* 887 F.2d 1096 (D.C.Cir.1989).[11] Both of these elements have been satisfied here.

---

10. *See Doty v. United States,* 71 F.3d 384, 385–86 (Fed.Cir.1995) (the EAJA's "position of the United States" language refers to the government's position throughout the dispute, including the position taken by the agency at the administrative level) (citing 28 U.S.C. § 2412(d)(2)(D) (1994)); *PCI/RCI v. United States,* 37 Fed.Cl. 785, 789 (1997).

11. The D.C. Circuit stated: "The meaning of 'substantially justified' in EAJA is now equally well settled. In *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court stated that 'substantially justified' means 'justified to a degree that could satisfy a reasonable person,' or having a 'reasonable basis

The USPS has failed in this case to show "substantial justification" for the positions it has taken. Analogizing to the EAJA case law, the government has not shown a reasonable basis for the facts it alleged, the legal theories it advanced, and that the facts will support that legal theory. *Gutierrez v. Sullivan,* 953 F.2d 579, 585 (10th Cir.1992) (citing *Gatson v. Bowen,* 854 F.2d 379, 380 (10th Cir.1988)). The government in this case did advance plausible legal theories based on *Finley, Crux Computer,* and *AT & T Technologies,* among others. However, none of the government's theories could have supported the facts as found by this court. *See supra* part II. Plaintiffs would have been entitled to attorneys' fees under the EAJA had any one of them been awarded the contract following a successful protest action. They should not be further penalized merely because they are only able to obtain restitutionary relief. Thus, plaintiffs are due their bid protest costs.

## CONCLUSION

Defendant's Motion to Dismiss is denied, as are its Motions for Summary Judgment and Judgment on the Administrative Record. Plaintiffs' are granted summary judgment as to liability, and awarded damages in the combined amount of bid preparation and bid protest costs, including attorneys' fees, but excluding the costs of the present action, for which a separate remedy exists under EAJA. The court emphasizes the unique nature of the facts in this case, which together necessitated a restitutionary remedy in excess of what would normally be awarded in a disappointed bidder case. The court is neither reading an attorneys' fees provision into the ADEPT Solicitation nor implying a cause of action to recover fees into every implied-in-fact contract that the government might breach.[12]

Plaintiffs are directed to submit within 90 days an accounting of costs to the court, separating bid preparation from bid protest costs. Defendant may respond to such an accounting; the court will subsequently schedule a status conference to fix an exact amount of damages due plaintiffs.

It is so ORDERED.

---

both in law and fact.' " 887 F.2d at 1098 (citing 108 S.Ct. at 2550).

12. In fact, pursuant to the 1996 amendments to the Tucker Act, bid protest damages are specifically not available in post-award bid protest actions brought in the Court of Federal Claims. *See* Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, 110 Stat. 3870, 3874–

75 (1996); 28 U.S.C. § 1491(b)(2) (1997) ("To afford relief in such action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs."). *See also Cincom Sys. Inc. v. United States,* 37 Fed.Cl. 663, 669 & n. 17 (1997).